William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CHAFFIN, JENNIE KIM, LORI SINGER, MICHELLE IRWIN, ROXANNE SIMS, and DAWN MILLER, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL COFFEE & TEA, LLC, dba THE COFFEE BEAN & TEA LEAF,<br><br>    Defendant. | Case No.:  2:24-cv-03132-GW-SK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ II

TABLE OF AUTHORITIES ................................................................................. III

I. INTRODUCTION ............................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................... 2

III. ARGUMENT .................................................................................................. 3

  A. LEGAL STANDARD ..................................................................................... 3

  B. PLAINTIFFS HAVE ALLEGED THAT THEY ARE DISABLED UNDER THE ADA ................................................................................................................. 4

  C. DEFENDANT DENIED PLAINTIFFS A PUBLIC ACCOMMODATION. ...7

  D. DEFENDANT'S POLICY DENIES PLAINTIFFS A LIKE EXPERIENCE. 11

  E. PLAINTIFFS HAVE STATED AN INTENTIONAL DISCRIMINATION CLAIM UNDER THE UNRUH ACT. ............................................................ 14

  F. DEFENDANT DENIED PLAINTIFFS A PUBLIC ACCOMMODATION...15

  G. SHOULD THE COURT BELIEVE THAT THE COMPLAINT IS INSUFFICIENT, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND. ......................................................................................................... 17

CONCLUSION.................................................................................................... 18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

3

<u>**Statutes**</u>

4

42 U.S.C. §12102(4)(A). ...................................................................................1

5

6

42 U.S.C. § 12181(7)(B) ...................................................................................7

7

8

42 U.S.C. § 12182(a)(i). ..............................................................................10, 11

9

42 U.S.C. § 12182(b)(2)(A)(ii) ....................................................................10, 11

10

11

42 U.S.C. § 12182(b)(2)(A)(iii) .........................................................................11

12

13

Cal. Civ. Code § 51(f)........................................................................................14

14

<u>**Rules and Regulations**</u>

15

16

7 CFR, Part 15b. .................................................................................................5

17

28 C.F.R. § 36.301 ............................................................................................10

18

19

28 C.F.R. § 36.307(a) ...................................................................................10, 11

20

28 C.F.R. § 36.307(b) ...................................................................................10, 11

21

22

Fed. R. Civ. P. 12(b)(6).. ...........................................................................passim

23

<u>**Cases**</u>

24

25

*Alphonsis v. Century Regional Detention Facility,* No. CV 17-03650-ODW (DFM),
2021 WL 11505981, *12 (C.D. Cal. Sept. 11, 2017*)............................................6

26

27

*Alphonsis v. Century Regional Detention Facility, No.* CV 17-03650-ODW (DFM),
2021 WL 4691824, *9-10 (C.D. Cal. Sept. 8, 2021). ...........................................7

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

*Abernathy v. Valley Medical Center*, 2006 WL 1515600 (W.D. Wash., May 25, 2006)...................................................................................................15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ...........................................4

*Baughman v. Walt Disney World Co.,* 685 F.3d 1131, 1132 (9th Cir. 2012) ....12,13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)...............................4

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) ......................4

*Chuang v. Univ. Cal. Davis Bd. Of Trustee.*, 225 F.3d 1115, 1124 (9th Cir. 2000) 15

*Dare v. California,* 191 F.3d 1167 (9th Cir. 1999) ....................................9

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).......4, 17

*Fortyune v. American Multi–Cinema, Inc.,* 364 F.3d 1075, 1085 (9th Cir. 2004).* 12

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ...........................................17

*Fraser v. Goodale,* 342 F.3d 1032, 1040 (9th Cir. 2003)...........................7

*Gitson v. Trader Joe's Co.,* No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015)..................................................................9

*Hebert v. CEC Entm't, Inc.,* 6:16-CV-00385, 2016 WL 5003952 (W.D. La. July 6, 2016)...................................................................................6

*Karczewski v. DCH Mission Valley LLC,* 862 F.3d 1006 ................................10, 11

*Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.,* 339 F.3d 1126, (9th Cir.2003). .......................................................................12

*Painter v. Blue Diamond Growers,* 757 F. App'x 517, 519 (9th Cir. 2018) ............9

*Peterson v. Cellco P'ship,* 80 Cal. Reptr 3d 316 (Ct. App. 2008*)* .........................15

*Phillips v. P.F. Chang's China Bistro, Inc.,* No. 5:15-cv-00344, 2015 WL 7429497, *4-6 (N.D. Cal., Nov. 23, 2015)..................................................passim

*Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal.App.4th 221, 231 (2014*)*....16

IV

*Rodriguez v. Putnam,* No. CV 11–8772–CJC (PJW), 2013 WL 1953687 (C.D. Cal. May 13, 2013). ................................................................................7

*Rohr v. Salt River Project Agric. Imp. & Power Dist.,* 555 F.3d 850, 861 (9th Cir. 2009)................................................................................4

*Harris v. Adams,* No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020)..6

*Sutton v. United Airlines, Inc.,* 527 U.S. 471 (1999)..................................................5

*Thompson v. Potter,* 252 Fed.Appx. 175 (9th Cir. 2007)..........................................6

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002).....5

*Wilkins-Jones v. Cnty. Of Alameda,* 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012)17

v

# I.     __INTRODUCTION__

Defendant discriminates against Plaintiffs and putative class members by levying a surcharge for non-dairy alternatives that Plaintiffs have no choice but to pay because of their lactose intolerance,[1] which is a disability under the ADA.  Defendant singles out Plaintiffs, and many others with the same disability, and asks them to pay a surcharge for non-dairy alternatives when it does not impose a surcharge on other modifications and when such surcharge is not justified by the cost of the non-dairy alternatives.  This conduct is contrary to the protections afforded by the ADA, as amended in 2008, and state discrimination laws.

As alleged in the First Amended Class Action Complaint ("Complaint" or "FAC"), Plaintiffs suffer from lactose intolerance, a chronic disorder with potentially severe health consequences, impacting the major life activities of eating and digestion. The cause of lactose intolerance, lactase deficiency, can be congenital, the result of progressive and physiological decline of lactase enzyme activity, or induced by small intestine disease or injury such as gastroenteritis, celiac disease, inflammatory bowel disease, chemotherapy, and antibiotics treatment.[2]  Persons with this disability must avoid lactose, a sugar found exclusively in dairy milk. Over time, lactose-restriction may induce insufficiency, potentially resulting in decreased bone mineral density, anemia, and neuropathy.

The ADA was amended in 2008 with the intent to expand the definition of what constitutes a disability.  The Justice Department issued new guidelines in 2016 to include the ADA amendments.  Since then, Courts have been favorable to an expansion of ADA rights, and Congressional intent on this issue supports this.  Indeed, several

---

[1] Plaintiffs will refer to both dairy allergies and lactose intolerance as "lactose intolerance" for purposes of this brief.

[2] Bobbi B Laing, Anecita Gigi Lim & Lynnette R Ferguson, *A personalised dietary approach—a way forward to manage nutrient deficiency, effects of the western diet, and food intolerances in inflammatory bowel disease*, 11 Nutrients1532 (2019).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

courts have considered lactose intolerance and other similar food or drink allergies to be disabilities under the ADA.

As such, Plaintiffs' claims are based on the fact that Defendant's groundless surcharge for non-dairy milk alternatives is discriminatory against persons with lactose intolerance and milk allergies. If Defendant chooses to offer non-dairy substitutes for milk, it denies Plaintiffs a reasonable accommodation when it charges extra for such substitutes, especially where the labor and cost for the substitutes is similar to the cost of dairy milk, and especially where it makes other ingredient substitutions for free. Defendant's conduct of imposing a surcharge on lactose-free drinks evidences an obvious attempt to profit from a vulnerable class of consumers precisely because of their medical condition.   This practice is a clear violation of the ADA and state discrimination laws and has unjustly enriched Defendant.

## II.   <u>FACTUAL BACKGROUND</u>

As alleged in the Complaint, Plaintiffs suffer from lactose intolerance, which means that it is medically necessary for Plaintiffs and putative class members to avoid consuming drinks that contain milk. FAC, ¶ 2. As the Complaint alleges, Plaintiffs will suffer adverse health effects if they ingest milk or milk-containing products, including stomach pain, cramping, bloating, bowel irregularities, nausea, and fatigue. FAC, ¶¶ 26-29, 36-37, 44, 52, 58-60, 66-69.   As a result, Plaintiffs must pay very careful attention to the drinks they consume and can only consume non-dairy alternatives including lactose free milk.  FAC, ¶ 74. The FAC also alleges in detail the effects of lactose intolerance on the major life activities of eating, drinking, and digestion. FAC, ¶¶ 73-84.

Defendant is a public accommodation, and Defendant operates stores in the United States and California. FAC, ¶¶ 22, 72, 113.  Plaintiffs visited Defendant's coffee shops and ordered drinks that included milk as part of the regular menu item and requested to substitute milk for Non-Dairy Alternatives, specifically oat "milk" or

almond "milk." FAC, ¶ 3. Plaintiffs were charged a minimum of an extra $0.80 surcharge by Defendant for the substitution, depending on the date and the location of the store. FAC, ¶¶ 4-6. Defendant's Surcharge is the same for all Non-Dairy Alternatives. FAC, ¶ 6. The Complaint also alleges that the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of Whole Milk, Half & Half, and Heavy Cream (which is provided for free by Defendant) is the same, if not more, than their Non-Dairy Alternatives. FAC, ¶¶ 8, 86. Defendant's standard offering in most beverages is 2% cow's milk, but Defendant will substitute whole milk or fat-free skim milk for the 2% milk ingredient to its beverages at no additional charge. FAC, ¶¶ 9-11. It will not substitute lactose-free milk at no additional charge, however. FAC, ¶¶ 10-11.

Defendant will modify its regular beverage offerings to make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension, and will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight. FAC, ¶¶ 12-13. There is no expertise or additional work required of Defendant's employees to substitute Non-Dairy Alternatives in place of 2% regular milk. FAC, ¶ 14. Accordingly, the Non-Dairy Alternative Surcharges are not imposed to defray the added costs of use of these ingredients but are designed to profit from those consumers with lactose intolerance and milk allergies. FAC, ¶ 87. Thus, the Complaint alleges that Defendant charges customers with lactose intolerance an excessively high surcharge to substitute Non-Dairy Alternatives in violation of the ADA, California Unruh Civil Rights Act, and constitutes common law Unjust Enrichment. FAC, Counts I-III.

## III.    ARGUMENT

### A.    Legal Standard

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure

- 3 -

1    to state a claim upon which relief can be granted, a court must accept all allegations of

2    material fact in the complaint as true and construe them in the light most favorable to

3    the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A

4    complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to

5    state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

6    544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

7    content that allows the court to draw the reasonable inference that the defendant is

8    liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where

9    courts believe a complaint requires additional facts to state a claim, "Rule 15 advises

10   the court that 'leave shall be freely given when justice so requires.' This policy is 'to

11   be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d

12   1048, 1051 (9th Cir. 2003).

13       **B.**    **Plaintiffs have alleged that they are disabled under the ADA.**

14       Defendant incorrectly argues that Plaintiffs are not disabled under the ADA and

15   that "Plaintiffs utterly fail to identify any major life activities that are substantially

16   limited by any impairment."  Opposition, 8:8-9.  But Defendant then concedes that

17   Plaintiffs have alleged that they suffer from lactose intolerance and will suffer a litany

18   of symptoms if they ingest dairy products.  Opposition, 8:9-12.  As discussed in detail

19   below, under the ADA and case law, lactose intolerance is a disability that impairs the

20   major life activity of digestion, and therefore Plaintiffs are disabled under the ADA.

21       The American with Disabilities Act (ADA) was amended in 2008. The clear

22   Congressional intent of the amendments to the ADA ("ADAAA")[3] was to expand the

23   scope and broaden the disabilities included within the ADA's protections. *Rohr v. Salt*

24   *River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009). Section 3

25   of the ADA was amended to include the following language under Section 4, Rules of

26

27

28   _____

[3] Any reference to the ADA in the FAC or this Response, is a reference to the statute in force as of the date of the FAC, which is amended by the ADAAA.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Construction Regarding the Definition of Disability: (A) "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." See 42 U.S.C. 12102(4)(A). The ADAAA was passed to restore the intent and protections of the Americans with Disabilities Act of 1990 and to reject the United States Supreme Court decisions that Congress believed were too narrowly decided with respect to the definition of disability under the ADA. Specifically, the ADAAA was passed to negate rulings by the United States Supreme Court in 1) *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), both of which Congress believed construed the definition of disability under the ADA too narrowly.

The ADA, and 7 CFR, Part 15b, define a person with a disability as any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment. Major life activities are broadly defined and include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, ***eating***, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Major life activities also include the operation of major bodily functions, including but not limited to, functions of the neurological, ***digestive***, or respiratory systems.[4] A physical or mental impairment does not need to result in a severe, life-threatening reaction to be considered a disability. It is sufficient that the impairment limits a major life activity. For instance:

> Digestion is an example of a bodily function that is a major life activity. A participant whose digestion is impaired by a lactose intolerance may have a disability regardless of whether consuming milk causes the participant severe distress.[5]

---

[4] Questions and Answers about the Department of Justice's Final Rule Implementing the ADA Amendments Act of 2008. https://archive.ada.gov/regs2016/adaaa_qa (visited Jun. 26, 2024).
[5] California Department of Education, Modifications to Accommodate Disabilities, https://www.cde.ca.gov/ls/nu/cc/mbcacfp082017sfsp022017.asp (visited Jun. 26, 2024).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs' lactose intolerance impacts the major life activities of digestion, eating and drinking. As discussed above, those are major life activities. *See Rohr*, 555 F.3d at 861 ("We recognized in 2003 that eating qualifies as such a major life activity.").

Defendant's argument that Plaintiffs are not substantially limited in any major life activity therefore fails. As noted above, eating and digestion are major life activities under the ADA as amended by the ADAAA.  Moreover, some courts have already found that lactose intolerance/dairy allergies are a disability under the ADA, as amended by ADAAA, and that it impacts a major life activity. *See Hebert v. CEC Entm't, Inc.*, 6:16-CV-00385, 2016 WL 5003952, at *1 (W.D. La. July 6, 2016) (report and recommendation adopted); *see also Harris v. Adams*, No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020).  Here, Plaintiffs allege that they will suffer adverse health effects if they ingest milk or milk-containing products, including stomach pain, cramping, bloating, bowel irregularities, nausea, and fatigue, and Plaintiffs have alleged how those issues impact their lives. FAC, ¶¶ 26-29, 36-37, 44, 52, 58-60, 66-69.  Therefore, Plaintiffs' allegations that they are lactose intolerant are sufficient to state that they are disabled under the ADA.

Defendant's cases to the contrary are inapposite. *Thompson v. Potter*, 252 Fed.Appx. 175 (9th Cir. 2007), as Defendant points out, considered whether a reaction to wax fumes constituted an impairment of a major life activity and had nothing to do with eating or digestion.  And the court in *Alphonsis v. Century Regional Detention Facility*, No. CV 17-03650-ODW (DFM), 2021 WL 11505981, *12 (C.D. Cal. Sept. 11, 2017) initially found that the pro se inmate plaintiff had "not adequately explained how her major life activity of eating is sufficiently impacted to constitute a disability under the ADA" but stated in a later ruling in the same case that "[t]he Court need not determine whether Plaintiff's allergies qualify as a disability" because the plaintiff was barred from a program for reasons other than her allergy.  *Alphonsis v. Century*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1    *Regional Detention Facility*, No. CV 17-03650-ODW (DFM), 2021 WL 4691824, *9-

2    10 (C.D. Cal. Sept. 8, 2021).  Thus, the court in *Alphonsis* did not find that the

3    plaintiff's allergy was not a disability and instead determined that her exclusion from

4    a program was due to her behavior and not due to her allergy.  *See id.*  Moreover, the

5    court in *Rodriguez v. Putnam*, No. CV 11–8772–CJC (PJW), 2013 WL 1953687 (C.D.

6    Cal. May 13, 2013) found that an inmate's peanut allergy was not a disability with

7    minimal discussion.  Finally, while Defendant cites *Fraser v. Goodale*, 342 F.3d 1032,

8    1040 (9th Cir. 2003) because the court in that case stated that "eating chocolate cake is

9    not a major life activity," Defendant also acknowledges (correctly) that the *Fraser*

10   court found that some food allergies can constitute a disability (and here, lactose

11   intolerance limits an entire category of food and drink, unlike an inability to eat

12   chocolate cake, which is one item and does not contain nutrients).  Thus, these cases

13   do not demonstrate that lactose intolerance is not a disability, and Defendants' motion

14   should be denied.

15        **C.    Defendant denied Plaintiffs a public accommodation.**

16        Defendant does not appear to deny that it is a public accommodation.  Indeed, it

17   could not do so.  *See* 42 U.S.C. § 12181(7)(B) ("a restaurant, bar, or other establishment

18   serving food or drink" is a "public accommodation" under the ADA).  Instead, it

19   appears to be arguing that it does not discriminate against Plaintiffs because it charges

20   both non-disabled and disabled patrons more for non-dairy alternatives.  But at least

21   one California court has already rejected the argument that this cannot constitute

22   discrimination.  In a case very similar to the one before this Court, the court held that

23   a plaintiff stated a claim under the Unruh Act based on an ADA violation regarding a

24   surcharge on customers with celiac disease who ordered from P.F. Chang's gluten-free

25   menu.  *See Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344, 2015 WL

26   7429497, *4-6 (N.D. Cal., Nov. 23, 2015).

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1    In *Phillips*, the plaintiff alleged that customers with celiac disease were singled

2    out and charged more for meals that were no different from regular meals for which

3    P.F. Chang's made free adjustments for food preferences for dietary needs. 2015 WL

4    7429497 at *4, 6. The plaintiff had pled that making gluten-free meals merely required

5    substituting for gluten or omitting gluten, which was similar to what P.F. Chang's did

6    for free for customers who wanted more or less spicy or vegetarian dishes, but P.F.

7    Chang's targeted customers with celiac disease and discriminated against them by

8    charging more for gluten-free meals. *Id.* at *5. The court in *Phillips* rejected the

9    defendant's argument— nearly identical to Defendant's argument here—that the

10   plaintiff could not show that defendant denied full and equal accommodations to

11   patrons with celiac disease because all guests paid the same price for gluten-free menu

12   items, regardless of whether they had celiac disease. *Id.* at *4. The court found that the

13   plaintiff had stated an Unruh Act and ADA claim because the plaintiff alleged that P.F.

14   Chang's "created an entirely separate—and higher priced— gluten-free menu targeted

15   to persons with celiac disease," that P.F. Chang's "direct[ed] customers with celiac

16   disease to the gluten-free menu rather than offering to make modifications for celiac

17   customers the way [P.F. Chang's] does for other customers" (such as making things

18   spicier or vegetarian), and that "the price differential between the regular-menu items

19   and their gluten-free menu equivalents [was] the same across the board." *Id.* at *4, 6.

20   Accordingly, the district court found that the plaintiff adequately alleged that "P.F.

21   Chang's d[id] not provide 'full and equal' accommodations or services to those

22   suffering from celiac disease" and that, from these facts, "one c[ould] reasonably infer

23   that P.F. Chang's intentionally discriminate[d] by targeting customers with celiac

24   disease." *Id.* at *4-6.

25        Defendant similarly imposes an improper discriminatory surcharge targeted at

26   disabled customers. Plaintiffs have alleged that Defendant imposes a surcharge

27   discriminating against those with lactose intolerance or milk allergies because the retail

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1    cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all)

2    and that the retail price of whole milk, half & half, and heavy cream (which is provided

3    for free by Defendant) is the same, if not more, than Non-Dairy Alternatives. FAC, ¶¶

4    8, 86.  Moreover, Plaintiffs have alleged that there is no expertise or additional work

5    required to substitute Non-Dairy Alternatives in place of 2% milk. FAC, ¶ 14.

6    Plaintiffs have also alleged that Defendant modifies its regular beverage offerings to

7    remove caffeine or make caffeine-free beverages at no additional charge for persons

8    with a variety of conditions, including hypertension, and will modify its regular

9    beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge

10   for those persons with diabetes or who need to control weight. FAC, ¶¶ 12-13.

11   Accordingly, the Non-Dairy Alternatives Surcharge is not imposed to defray the added

12   costs of use of these ingredients or labor needed but is designed to profit from those

13   consumers with lactose intolerance and milk allergies. FAC ¶ 87.  Therefore, as in

14   *Phillips*, Plaintiffs have alleged a claim under the ADA and the Unruh Act.

15         Defendant's cases are inapposite. Defendant's reliance on *Dare v. California*,

16   191 F.3d 1167 (9th Cir. 1999) is misplaced.  That case is a Title II case appliable to

17   public entities rather than a Title III case and is inapplicable here. In contrast, *Phillips*,

18   *supra*, is a Northern District of California case, and is substantially similar to the case

19   before this court and should be applied in this instance. Moreover, Defendant's reliance

20   on *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) fails.

21   *Painter* was a product mislabeling case where the plaintiff alleged that the defendant

22   had mislabeled its beverages as almond "milk" because milk and the product had

23   different nutritional profiles. *Id.* Similarly, *Gitson v. Trader Joe's Co.*, No. 13-CV-

24   01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) is another product

25   mislabeling case, this time addressing soy "milk."

26         Defendant also suggests that Plaintiffs are seeking to regulate the content and

27   characteristics of its goods.  But Plaintiffs are not seeking to regulate the price of

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant's specialty coffee and tea beverages, nor are they demanding that Defendant alter its inventory. Indeed, Coffee Bean does not sell milk as an individual product, but instead uses milk as one ingredient in its specialty beverages, in the same way that caffeine and sugar—which it swaps out for free—are ingredients. Instead, Plaintiffs have alleged that because Defendant already has non-dairy alternatives in its inventory, and it already takes special orders for customers without a surcharge (including modifying drinks to be caffeine-free, sugar-free, and to substitute various dairy milks), it must do so for lactose intolerant customers and customers with milk allergies as well. *See Karczewski v. DCH Mission Valley LLC,* 862 F.3d 1006*, 1014-1015; Phillips,* 2015 WL 7429497, at *4-6. Defendant's failure to offer the same benefit to persons with lactose intolerance and milk allergies (except with an added surcharge) fails to provide Plaintiffs with a "like experience" and constitutes discrimination under the ADA. *See* 42 U.S.C. § 12182(a)(i).

The ADA specifically refers to provision of "goods" and "services," and its regulations provide that if an establishment already makes alterations or modifications, or takes special orders for its customers, it must do so for disabled customer requests as well. *See* 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.307(a) & (b). Most importantly, a "public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

Plaintiffs have alleged that because Defendant already has Non-Dairy Alternatives in its inventory, and it already takes special orders for customers without a surcharge (including modifying drinks to be caffeine-free, sugar-free, and to substitute various dairy milks), it must do so for lactose intolerant customers and

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

customers with milk allergies as well. See 28 C.F.R. § 36.307(a) & (b). Defendant's
failure to offer the same benefit to persons with lactose intolerance and milk allergies
(except with an added surcharge) expressly constitutes discrimination under the ADA.
See 42 U.S.C. § 12182(a)(i).

### D.    Defendant's policy denies Plaintiffs a "like experience."

The Ninth Circuit has required that public accommodations provide a "like
experience" for disabled individuals to those experienced by non-disabled individuals.
42 U.S.C. §12182(b)(2)(A)(ii) provides:

> **(a) General rule**
> No individual shall be discriminated against on the basis of disability in
> the full and equal enjoyment of the goods, services, facilities, privileges,
> advantages, or accommodations of any place of public accommodation by
> any person who owns, leases (or leases to), or operates a place of public
> accommodation.
>
> **(2) Specific prohibitions**
>   **(A) Discrimination**
>     For purposes of subsection (a), discrimination includes—
>                    * * *
>   **(ii)** a failure to make reasonable modifications in policies,
>     practices, or procedures, when such modifications are
>     necessary to afford such goods, services, facilities,
>     privileges, advantages, or accommodations to individuals
>     with disabilities, unless the entity can demonstrate that
>     making such modifications would fundamentally alter the
>     nature of such goods, services, facilities, privileges,
>     advantages, or accommodations…

The Ninth Circuit has broadly interpreted this provision. *See Karczewski v. DCH
Mission Valley LLC*, 862 F.3d 1006, 1011-1012 (9th Cir. 2017) (collecting cases, and
stating, "[t]o the contrary, both the statute and our cases generally reject restrictive
interpretations of the ADA.").

The plain language of the statute demonstrates that it applies to Plaintiffs' claims.
Defendant's policy, practice, or procedure is to serve specialty coffee and teas with 2%

1  cow's milk (or to substitute other dairy products at no additional charge).  *See* FAC, ¶¶

2  9-10.   But Plaintiffs cannot consume dairy without experiencing serious medical

3  symptoms, and therefore a modification of that policy, practice, or procedure is

4  necessary to afford them such goods and services.  *See* FAC, ¶¶ 73-88.

5       In *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1132 (9th Cir. 2012),

6  the Court considered whether a disabled person could use a Segway to visit Disneyland

7  instead of the wheelchairs and motorized scooters that were usually allowed.  The

8  plaintiff asserted that a Segway was necessary because she had difficulty standing from

9  a seated position, and a Segway also would allow her to be at eye-level instead of being

10  looked down upon by others.  *See id.* at 1136.  The Ninth Circuit rejected Disney's

11  argument that because the plaintiff *could* access Disneyland using a wheelchair or

12  scooter, a Segway was not necessary.  *See id.* at 1134.  Noting that Disney's reading of

13  the ADA would require very few accommodations, the Ninth Circuit emphasized that

14  ***"[t]he ADA guarantees the disabled more than mere access to public facilities; it***

15  ***guarantees them 'full and equal enjoyment***.'" *Id.* at 1134-1135 (emphasis added).

16  The Court then illustrated its point by discussing *Fortyune v. American Multi–Cinema,*

17  *Inc.,* 364 F.3d 1075, 1085 (9th Cir. 2004), where it held that a theater was required to

18  provide wheelchair seating for the disabled individual *and* an adjacent seat for his wife

19  because moviegoers expect to sit with their friends and family during the show; their

20  enjoyment is diminished if they are forced to sit apart.  "Because Fortyune require[d]

21  an attendant to *enjoy* the viewing of a film, the modification that he requested, *i.e.,* that

22  [the theater] ensure that his companion could be seated next to him, was necessary."

23  *Id.* at 1083 (emphasis added).

24       The *Baughman* Court further cited *Oregon Paralyzed Veterans of America v.*

25  *Regal Cinemas, Inc.,* 339 F.3d 1126, 1127–28 (9th Cir.2003), regarding seating for

26  wheelchair-bound patrons only in the front rows of the theater, noting that it found it

27  "simply inconceivable that this arrangement could constitute 'full and equal

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1  enjoyment' of movie theater services by disabled patrons" because it required them "to

2  crane their necks and twist their bodies in order to see the screen, while non-disabled

3  patrons [had] a wide range of comfortable viewing locations from which to choose."

4  *Id.* at 1133. Relying on this precedent, the Ninth Circuit in *Baughman* therefore found

5  that "[p]ublic accommodations must start by considering how their facilities are used

6  by non-disabled guests and then take reasonable steps to provide disabled guests with

7  a like experience," and "[i]f [Disney] can make Baughman's experience less onerous

8  and more akin to that enjoyed by its able-bodied patrons, it must take reasonable steps

9  to do so." *Id.* at 1135-1136.

10       Similarly, here, disabled individuals are denied a "like experience" and "full and

11  equal enjoyment."  Part of the experience of going to Coffee Bean is ordering their

12  specialty drinks, most of which include milk products.  After all, most people who want

13  to order plain black coffee or tea can just as easily make it at home rather than go out

14  to a store for it.  Thus, in order to fully enjoy this experience, disabled individuals with

15  a milk allergy or lactose intolerance should be able to substitute the dairy milk in these

16  drinks for non-dairy milk at the same cost (and as alleged in the FAC, ¶ 86, there is no

17  significant cost difference in these milks and there is no difference in labor).  But under

18  Coffee Bean's current policy, disabled individuals are required to choose between

19  foregoing traditionally dairy-based specialty drinks, adding dairy to their drinks and

20  experiencing serious medical symptoms, or paying extra for their drinks.  This is not a

21  "like experience" and diminishes their enjoyment.  Indeed, nondisabled individuals are

22  able to enjoy their coffee and tea at a 17% lower price than disabled individuals.  FAC,

23  ¶ 7.  And individuals with health issues that require them to substitute caffeinated

24  coffee for decaf or sugar for sugar-free syrup are also able to enjoy their coffee or tea

25  without paying extra for these substitutions.[6]  Plaintiffs' requested modification is thus

26

27

28  [6] Moreover, Defendant's argument that Plaintiffs can simply drink dairy and wait by the bathroom flies in the face of Ninth Circuit precedent and is, quite frankly, offensive.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

necessary to have a "like experience" under the ADA and Ninth Circuit precedent, and Defendant's Motion should be denied.

**E.    Plaintiffs have stated an intentional discrimination claim under the Unruh Act.**

Defendant argues that Plaintiffs have failed to state a claim because they have not alleged intentional discrimination. But intentional discrimination is not required for a violation of the Unruh Act that is based upon a violation of the ADA. *See Phillips*, 2015 WL 7429497, at *6. The Unruh Act specifically provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990, shall also constitute a violation of this section." *See* Cal. Civ. Code § 51(f). As argued above, Plaintiffs have stated claims for violations of their rights under the ADA. Therefore, they have stated a claim under the Unruh Act.

But Plaintiffs have also alleged violation of the Unruh Act independent of the ADA. To do so, Plaintiffs need only allege facts showing "(1) [they were] denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [their] disability was a motivating factor for this denial; (3) defendant denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendant's wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *See Wilkins-Jones v. Cnty. Of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012).

Plaintiffs have established their prima facie case here. First, Plaintiffs allege they were denied the full and equal accommodations, advantages, facilities, privileges, or services in Defendant's business. FAC, ¶133-140. The accommodation, advantage, facility, privilege, or service at issue here is Defendant's policy and practice of accommodating other customers' dietary preferences upon request and free of charge by making modifications to Defendant's beverages. Defendant denied the full and equal enjoyment of this accommodation by requiring Plaintiffs to pay the surcharge for

Non-Dairy Alternatives required by their disability. *Id.*  Second, Plaintiffs allege facts showing that the Plaintiffs' disability was a motivating factor for the denial of the accommodation. Specifically, Plaintiffs allege that (a) Defendant offers modifications free of charge to customers without lactose intolerance, i.e. whole milk, fat-free milk, caffeine-free and sugar-free (FAC, ¶¶ 12-14, 86); (b) the price differential of the Surcharge is the same no matter which Non-Dairy Alternative is substituted, i.e. there is no difference between the extra charge for soy, almond, oat or lactosee-free alternatives (*Id.*, ¶ 6); and c) the Non-Dairy Alternative Surcharge is not based on any additional cost to Defendant of preparing the beverage with the Non-Dairy Alternative substituted (*Id.*, ¶¶ 14, 86). *See Abernathy v. Valley Medical Center*, 2006 WL 1515600, at *3 (W.D. Wash., May 25, 2006) (holding that plaintiff could establish intentional discrimination where defendant failed to provide plaintiff with a service that defendant "routinely" provides others.) Third, it was Defendant that denied Plaintiffs the full and equal enjoyment of this benefit because the complained-of conduct occurred at Defendant's retail stores and pursuant to Defendant's policy. FAC ¶ 150. Fourth, Defendant's wrongful conduct caused Plaintiffs to suffer injury, damage, loss or harm – namely, the cost of the Surcharge. FAC, ¶ 151.  The facts alleged are more than enough to establish prima facie discrimination under the Unruh Act. *See Chuang v. Univ. Cal. Davis Bd. Of Trustee.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (observing that "[t]he proof required to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence.").

### F.   Plaintiffs have stated a claim for unjust enrichment and restitution.

Plaintiffs have sufficiently alleged damages to maintain a cause of action for unjust enrichment.  In California, the elements of an unjust enrichment claim are: 1) Defendant received a benefit; 2) Defendant's benefit was at the Plaintiff's expense; and 3) it would be unfair for the defendant to keep the benefit without compensating a proportionate amount to the plaintiff. *See Peterson v. Cellco P'ship*, 80 Cal. Reptr 3d

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

316 (Ct. App. 2008). Again, all the elements are present in the FAC: (1) Plaintiffs paid a surcharge for being disabled. Plaintiffs conferred a benefit to Defendant by allowing them to collect a surcharge in exchange for providing Plaintiffs with non-dairy alternatives such as lactose-free milk (FAC, ¶ 156) (2) Defendant has knowledge and appreciation of the surcharge and (3) it would be inequitable for the Defendant to retain said benefit and reap unjust enrichment (FAC, ¶ 159). Defendant incorrectly claims that Plaintiffs cannot state a claim for unjust enrichment because they received the benefit of their bargain. But that is not the case. Here, Plaintiffs did receive a latte or a cappuccino, but they paid more than the beverage was worth because Defendant imposed a surcharge on their condition. Non-disabled persons paid less for those beverages than Plaintiffs and the class.

An unjust enrichment claim should be construed as a claim seeking restitution. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014). In *Phillips*, *supra*, the court found that the plaintiff stated a claim for unjust enrichment where the defendant took additional money from plaintiff and members of the putative class for gluten-free menu items that were substantially identical to non-gluten free menu items except for the presence of gluten based solely on the fact that plaintiff and the putative class could not consume foods with gluten and had no choice but to pay a surcharge for gluten-free foods. *See Phillips*, 2015 WL 7429497, at *7. The court found that the plaintiff had sufficiently alleged that the defendant had unjustly retained a benefit from the plaintiff. Plaintiffs here make similar allegations. Specifically, Plaintiffs allege that Defendant enriched itself at the expense of Plaintiffs and the putative class members by its illegal levying of the Surcharge for Non-Dairy Alternatives. FAC, ¶ 157. Plaintiffs have alleged that Defendant imposes a surcharge discriminating against those with lactose intolerance or dairy allergies because the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of Whole Milk, Half & Half, and Heavy Cream (which

- 16 -

is provided for free by Defendant) is the same, if not more, than their Non-Dairy Alternatives. FAC, ¶¶ 8, 86. Moreover, Plaintiffs have alleged that there is no expertise or additional work required to substitute Non-Dairy Alternatives in place of 2% milk. FAC., ¶ 86. Plaintiffs have therefore alleged that the Non-Dairy Alternative Surcharges are not imposed to defray the added costs of use of these ingredients or labor needed but are designed to profit from those consumers with lactose intolerance and milk allergies. FAC., ¶ 87. Therefore, as in *Phillips*, Plaintiffs have alleged a claim for unjust enrichment.

### G. <u>Should the Court believe that the Complaint is insufficient, the Court should grant Plaintiffs leave to amend.</u>

Where courts believe a Complaint requires additional facts to state a claim, "Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" *Eminence*, 316 F.3d at 1051. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[7]—the leave sought should, as the rules require, be 'freely given.'" *Id.* at 1052 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Should the Court believe that Plaintiffs have failed to include detailed enough allegations regarding their disability, regarding Defendant's failure to accommodate Plaintiffs, or regarding any other issue, Plaintiffs respectfully request leave to amend to allege these facts.  *See, e.g. Phillips*, No. 5:15-cv-00344, 2015 WL 4694049, *9 (N.D. Cal. Aug. 6, 2015) (granting leave to amend) and *Phillips*, 2015 WL 7429497, *5-8 (finding amended complaint stated a claim).

---

[7] None of these factors are present here and, should the Court find merit to any of Defendant's arguments, all of their concerns could be rectified by amendment.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

# IV.  **CONCLUSION**

For all the reasons stated herein, Plaintiffs have properly alleged facts to support each of their claims against Defendant. Accordingly, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss Plaintiffs' Amended Complaint. However, to the extent the Court believes Plaintiffs are required to allege additional facts to state a claim against Defendant, Plaintiffs request that the Court allow them to amend the Complaint to allege such additional facts. *See Eminence*, 316 F.3d at 10.

Dated: December 26, 2024                     Respectfully submitted,

/s/ Bogdan Enica
Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
1200 N Federal Hwy, Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
586 Duane Street Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

William M. Aron (SBN No. 234408)
ARON LAW FIRM
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Counsel for Plaintiffs and the Putative Class*

- 18 -

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that this brief is typed in 14-point Times New Roman and complies with the typeface and the type-style requirements of L.R. 11-3.1.1.

The undersigned, counsel of record for Plaintiffs, also certifies that this brief contains 5595 words (excluding the caption page, table of contents, table of authorities and the signature block), which complies with the word limit of L.R. 11-6.1.

Dated: December 26, 2024

/s/Keith Gibson
Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
586 Duane Street Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

- 19 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 26, 2024, the foregoing was electronically served on all counsel of record in this case via the Court's ECF filing system, as listed below.

Jennifer S. Rusie, Esq.
Joseph DiPalma, Esq.
Karen W. Luh, Esq.
JACKSON LEWIS, PC
jennifer.rusie@jacksonlewis.com
joseph.dipalma@jacksonlewis.com
karen.luh@jacksonlewis.com

/s/Keith Gibson
Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
586 Duane Street Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT