Karen Luh (SBN 243256)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: (213) 689-0404
Fax: (213) 689-0430
Karen.Luh@jacksonlewis.com

Attorneys for Defendant
INTERNATIONAL COFFEE & TEA, LLC,
dba THE COFFEE BEAN & TEA LEAF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CHAFFIN, JENNIE KIM, LORI SINGER, MICHELLE IRWIN, ROXANNE SIMS, and DAWN MILLER, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL COFFEE & TEA, LLC, dba THE COFFEE BEAN & TEA LEAF<br><br>Defendant. | Case No.: 2:24-cv-03132-GHW-SK<br><br>**CLASS AND REPRESENTATIVE ACTION**<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:  January 16, 2025<br>Time:  8:30 a.m.<br>Court: 9D (9th Floor)<br>Judge: Hon. George H. Wu<br><br>Amended Complaint Filed: September 6, 2024 |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baughman v. Walt Disney World Co.*,
　685 F.3d 1131 (9th Cir. 2012) ................................................................. 9, 11, 12

*Dare v. California*,
　191 F.3d 1167 (9th Cir. 1999) ............................................................................ 8

*Fraser v. Goodale*,
　342 F.3d 1032 (9th Cir. 2003) ........................................................................ 5, 6

*Galvez v. Auto. Club of S. Cal.*,
　2017 U.S. Dist. LEXIS 214650 (C.D. Cal. 2017), aff'd, 745 F. App'x
　39 (9th Cir. 2018) .............................................................................................. 9

*Hebert v. CEC Entm't, Inc.*,
　2016 WL 5003952 (W.D.La. 2016) ................................................................... 5

*Karczewski v. DCH Mission Valley LLC*,
　862 F.3d 1006 (9th Cir. 2017) ...................................................................... 9, 10

*Munoz v. Peets Coffee, Inc.*,
　2024 U.S. Dist. LEXIS 201361 (N.D.Cal. 2024) ........................................ *passim*

*PGA Tour v. Martin*,
　532 U.S. 661, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) ................................ 8

*Phillips v. P.F. Chang's China Bistro, Inc.*,
　2015 U.S. Dist. LEXIS 159474 (N.D.Cal. Nov. 23, 2015) ................... 6, 7, 8, 13

**California Cases**

*Peterson v. Cellco P'ship*,
　164 Cal. App. 4th 1583 (2008) .................................................................. 12, 13

**Federal Statutes**

42 U.S.C.
  § 12010 (1990)..................................................................................................3, 4, 12
  § 12102(1) ....................................................................................................................4
  § 12182(a)(i) ................................................................................................................8
  § 12182(b)(2)(A)(ii) ....................................................................................................8

**California Statutes**

Cal. Civ. Code
  § 51 et seq. ..................................................................................................................3

**Other Authorities**

28 C.F.R. § 36.307(a) ...................................................................................................10

28 C.F.R. § 36.307(b) ...................................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In the present matter, Plaintiffs claim that International Coffee & Tea, LLC dba The Coffee Bean & Tea Leaf has violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12010 (1990) ("ADA" or "Title III") and the Unruh Act, Cal. Civ. Code § 51 et seq., because it imposes charges for non-dairy milks such as almond milk, oat milk, or soy milk ("Non-Dairy Alternatives") and it offers cow's milk ("Dairy Milk") for free, in addition to a claim for unjust enrichment.  Plaintiffs do not allege that they are substantially limited in any major life activity; rather, they simply claim that their lactose intolerance "impacts" the major life activities of eating and digestion. A condition that merely "impacts" a major life activity does not qualify as a disability; moreover, consuming Dairy Milk is not a major life activity.  For this reason alone, Plaintiffs are not disabled and have not stated a claim upon which relief may be granted.

In arguing that Defendant denied Plaintiffs a reasonable accommodation, Plaintiffs claim that Defendants imposed an unlawful surcharge targeted at disabled customers, despite the fact that Defendants charge the same amount for Non-Dairy Alternatives to all who order them.  In making this argument, Plaintiffs ignore Ninth Circuit precedent and a case that has a virtually identical fact pattern to that of the present matter that unequivocally held that an across-the-board charge for Non-Dairy Alternatives is not an unlawful surcharge.  This case also held that one must actually make a request for a reasonable accommodation in order to be entitled to one— something none of the Plaintiffs in the present matter did.

Plaintiffs also argue that Defendant's failure to provide Non-Dairy Alternatives at the same price as Dairy Milk precluded them from enjoying a like experience to non-disabled individuals.  The ADA only regulates access to a place of public accommodation and its goods and services: it does not regulate the goods and services

themselves and certainly does not regulate the prices of these items.

Finally, Plaintiffs' claim for a disgorgement of profits for unjust enrichment or restitution cannot be sustained.  Plaintiffs received the benefit of the bargain, so there was no unjust enrichment.  Restitution is an equitable remedy, which is inappropriate when adequate remedies exist at law, which Plaintiffs have explicitly requested.

As discussed more fully herein, the Amended Complaint should be dismissed in its entirety as these deficiencies preclude the Amended Complaint from stating a claim upon which relief may be granted.

## II.  LEGAL ARGUMENT

### A. Plaintiffs Are Not Disabled Within the Meaning of the ADA and Do Not Plausibly Allege as Much

Plaintiffs acknowledge that Title III of the Americans with Disabilities Act of 1990 defines "disability" as "(A) a physical or mental impairment that *substantially limits* one or more of the *major life activities* . . ." 42 U.S.C. § 12102(1)(emphasis added).  However, Plaintiffs utterly fail to even allege that their alleged "impairment"—lactose intolerance—substantially limits any major life activity.  Rather, they claim that their lactose intolerance "*impacts* the major life activities of digestion, eating and drinking." (Pls.' Mem. in Opp. to Mot. to Dismiss, pp. 1, 6, Docket No. 23).  At no point do they claim that their inability to digest Dairy Milk "substantially limits" any major life activity.  This failure conclusively precludes Plaintiffs from stating a claim under the ADA.

Plaintiffs also fail to cite any case law in support of their allegation that lactose intolerance constitutes a disability under the ADA.  Plaintiffs' claim that "a physical or mental impairment does not need to result in a severe, life-threatening reaction to be considered a disability.  It is sufficient that the impairment limits a major life activity" blatantly contradicts the plain language of the ADA and is not supported by any legal authority. (Pls.' Mem. in Opp. to Mot. to Dismiss, p. 5, Docket No. 23).

Indeed, Plaintiffs' only citation in support of this proposition is to a management bulletin published by the California Department of Education regarding school lunches. This does not overcome the plain language of the ADA or the Ninth Circuit case law to the contrary.

Plaintiffs' claim that "some courts have already found that lactose intolerance/dairy allergies are a disability under the ADA, as amended by the ADAAA, and that it impacts a major life activity" is patently false, and the cases Plaintiffs cite do not stand for this proposition and are also not binding on this Court. In fact, Harris v. Adams, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020), which is unpublished and not citable, involved a plaintiff suffering from irritable bowel syndrome who sued under the California Unruh Act, and the court affirmed the demurrer on the cause of action alleging violation of the Unruh Act based on a violation of the ADA. *Id.* at *11-12. Plaintiff had requested modifications to her meals based on "lactose intolerance" and the appellate court explained that "simply advising a restaurant that one is lactose intolerant does not provide notice that the person suffers from a qualifying disability." *Id.* This case in no way supports Plaintiffs' claim. Similarly, *Hebert v. CEC Entm't, Inc.*, 2016 WL 5003952 (W.D.La. 2016) involved a plaintiff with a dairy allergy that results in life threatening anaphylactic reaction; this case does not hold that bloating and stomach pain from consuming Dairy Milk is a disability under the ADA.

That Plaintiffs must resort to citing such cases proves that there is no authority that actually supports their proposition. Plaintiffs have failed to allege that an intolerance to lactose "substantially limits" any major life activity, and have consequently failed to state a violation of the ADA or the Unruh Act.

Plaintiffs have also failed to allege that consuming Dairy Milk is a "major life activity", as they must in order to state a claim under the ADA or the Unruh Act. As set forth in Defendants' Motion to Dismiss, eating or drinking or digesting a particular item is not a major life activity. *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003). In

*Fraser*, the Ninth Circuit held that an intolerance to a single food product is not a disability because consuming a single item is not a major life activity, but a severe allergy to a food may be a disability: "If a person is impaired only from eating chocolate cake, he is not limited in a major life activity **because eating chocolate cake is not a major life activity**." *Id.* at 1040 (emphasis added).  The *Fraser* court's chocolate cake intolerance example is merely that—an example. That the Fraser court did not specifically address Dairy Milk does not in any way diminish its point—that consumption of a single food item is not a major life activity and that an intolerance to a specific item—as opposed to an allergy—is not a disability.

As such, Plaintiffs have failed to state a claim under the ADA and dismissal of Plaintiffs' Amended Complaint is warranted.

### B. Defendant Did Not Deny Plaintiffs a Public Accommodation

#### 1. The Pricing of Non-Dairy Alternatives Is Not an Unlawful Surcharge

Plaintiffs rely heavily on *Phillips v. P.F. Chang's China Bistro, Inc.*, 2015 U.S. Dist. LEXIS 159474 (N.D.Cal. Nov. 23, 2015), incorrectly claiming that *Phillips* is "a case very similar to the one before this Court".  As set forth below, the situation in *Phillips* is distinguishable in a significant way (the existence of a separate gluten-free menu), and the *Phillips* court did not apply the relevant Ninth Circuit case law regarding unlawful surcharges. Tellingly, Plaintiffs ignore the most analogous case to that of the present matter—*Munoz v. Peets Coffee, Inc.*, 2024 U.S. Dist. LEXIS 201361 (N.D.Cal. 2024)—which properly distinguishes *Phillips* and held that an across-the-board charge for Non-Dairy Alternatives is not an unlawful surcharge and granted the defendant's Motion to Dismiss.

Notably,  the *Munoz* case was brought by one of the plaintiffs in the present matter—Michelle Irwin—along with others, and asserted allegations virtually identical to those of the present matter: that the defendant discriminates against individuals with lactose intolerance or milk allergies by charging more for beverages made with non-

dairy alternatives than those made with dairy milk, despite no additional labor or ingredient cost required.[1] *Id.* at *2. As such, the Northern District of California's holding in *Munoz*—that Peet's did not impose an unlawful surcharge on disabled customers and therefore did not violate the ADA—is directly on point and is much more relevant that that in *Phillips*.

In *Phillips,* the plaintiff "allege[d] that P.F. Chang's discriminated against her and other guests with celiac disease or a gluten allergy or intolerance by charging $1.00 more for some gluten-free menu items than for comparable non-gluten-free menu items." 2015 U.S. Dist. LEXIS 159474 at *1. The court in *Phillips* relied on the plaintiff's allegation that P.F. Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease" and that it "direct[ed] customers with celiac disease to the gluten-free menu rather than offering to make modifications for celiac customers the way Defendant does for other customers." *Id.* at *4.

Unlike in *Phillips*, the *Munoz* plaintiffs did not allege that Peet's has an entirely separate and more expensive "dairy-free" menu that contains identical items as those on its regular menu, including those items that are naturally dairy-free, such as black coffee or plain tea. 2024 U.S. Dist. LEXIS 201361, *10. The *Munoz* plaintiffs have similarly not alleged that Peet's directs customers with lactose intolerance or milk allergies to the more expensive menu items that include non-dairy alternatives. *Id.*

The *Munoz* court then held that:
> Peet's thus does not impose a surcharge on individuals with lactose intolerance or milk allergies, but rather on anyone who orders a drink made with a non-dairy alternative, which can be ordered for reasons unrelated to having a medical condition—including personal preference.

---

[1] The attorneys representing the plaintiffs in Munoz also represent Plaintiffs in the present matter.

*Id.* (citing *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 546-47 (W.D. Pa. 2013)

The same is true in the present matter. Defendant does not have a separate "Dairy Free" menu to which it directs lactose intolerant individuals. Plaintiffs concede that Defendant imposes a fee for Non-Dairy Alternatives on all customers, not just individuals who are lactose intolerant. Am. Compl. ¶ 85. As set forth in Defendant's Motion to Dismiss, because the fee is charged to all individuals regardless of disability status, the fee is not an impermissible "surcharge" that is prohibited by the ADA under the two-part test set forth in *Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999). While *Dare* involved a Title II claim, the definition of a surcharge is the same for Title II and Title III of the ADA—Plaintiffs' unsupported statement that *Dare* is inapplicable is incorrect. Indeed, the *Munoz* court relied heavily on *Dare* in holding that an additional charge for Non-Dairy Alternatives did not constitute an unlawful surcharge. That Plaintiffs did not even attempt to counter Defendant's arguments regarding the *Dare* two-part test and instead rely solely on *Phillips* is telling and amounts to a concession that they cannot meet this test. Indeed, they cannot. The pricing of the Non-Dairy Alternatives, which is the same for all consumers, is not an unlawful surcharge and does not violate the ADA.

**2. Plaintiffs Did Not Request a Reasonable Modification**

Plaintiffs appear to argue that Defendant has failed to make reasonable modifications in its policies regarding charges for Non-Dairy Alternatives, and that this violates 42 U.S.C. § 12182(b)(2)(A)(ii).[2] Plaintiffs are incorrect. To establish a prima facie case alleging a violation of that statutory provision, a plaintiff must sufficiently allege that the defendant failed to make a requested modification that was both (1) "reasonable" and (2) "necessary" to accommodate the plaintiff's disability. *See PGA Tour v. Martin*, 532 U.S. 661, 683 n.38, 121 S. Ct. 1879, 149 L. Ed. 2d 904

---

[2] Plaintiffs cite 42 U.S.C. § 12182(a)(i) and 42 U.S.C. § 12182(b)(2)(A)(ii). There is no 42 U.S.C. § 12182(a)(i); as such, Defendant will only address 42 U.S.C. § 12182(b)(2)(A)(ii).

(2001); *see also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017). A requested modification is "necessary" when failure to provide the accommodation would deprive a disabled customer from having a "like experience" as non-disabled customers. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

The *Munoz* court noted that many courts within the Ninth Circuit have interpreted *Karczweski* as requiring that a plaintiff actually request a reasonable modification and have dismissed claims where the plaintiff did not request any modification prior to filing a lawsuit. *Munoz*, 2024 U.S. Dist. LEXIS 201361, *11-12 (citing *Namisnak v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 221054 (N.D. Cal. 2018) (citing cases); *Galvez v. Auto. Club of S. Cal.*, 2017 U.S. Dist. LEXIS 214650, (C.D. Cal. 2017), aff'd, 745 F. App'x 39 (9th Cir. 2018) (explaining that "[d]istrict courts in the Ninth Circuit have interpreted the 'requested modification' rule narrowly" to dismiss claims where the plaintiff did not allege having requested any modifications). While no "magic words" are required, a plaintiff must request an accommodation before claiming that a defendant "has refused to modify its policy, practices or procedures in violation" of the ADA. *Id*. (quoting *Namisnak,* 2018 U.S. Dist. LEXIS 221054 at *3).

In the present matter, as in *Munoz*, Plaintiffs do not allege that they ever requested a reasonable modification—in this case asking Defendant to charge the same price for a drink made with Non-Dairy Alternatives as it does for that drink made with dairy milk to accommodate Plaintiffs' lactose intolerance.  This omission is fatal to Plaintiffs' claim that Defendant failed to make a reasonable modification and that this alleged failure violates that ADA.

### 3. The ADA Does Not Regulate the Price of Goods

Plaintiffs cite *Karczweski,* 862 F.3d at 1014-15, for the proposition that "because Defendant already has non-dairy alternatives in its inventory, and it already takes

special orders for customers without a surcharge (including modifying drinks to be caffeine-free, sugar-free, and to substitute various dairy milks), it must do so for lactose intolerant customers and customers with milk allergies as well."[3]  Pls.' Mem. in Opp. to Mot. to Dismiss, p. 10 (Docket No.23).  Plaintiffs' contention is incorrect.

The *Karczweski* court held that 28 C.F.R. § 36.307(a), which concerns when a business must "alter its inventory to include *accessible or special goods*" and 28 C.F.R. § 36.307(b), which creates an exception to the general rule by requiring that a "public accommodation shall *order* accessible or special goods" in some circumstances, pertain to the circumstances in which a business must order additional goods; it does not speak to Plaintiff's requested accommodation."[4]  *Karczweski,* 862 F.3d at 1014 (emphasis in original).   and in the present matter, Plaintiffs are not claiming that Defendant must order accessible or special goods; Plaintiffs are arguing that Defendant must alter the price of an item already in its inventory that is enjoyed by all individuals regardless of disability status.  Nothing in the ADA requires a place of public accommodation to lower the price of a good[5] in its inventory because an individual with a disability would like to purchase it.  Rather, The ADA regulates access to the goods and services that places of public accommodation typically provide, not the content of those goods and services, and not the pricing of those goods and services. Plaintiffs have equal access to Defendant's locations and all of its offerings, including Non-Dairy Alternatives.  As such, Defendant complies with the ADA.

---

[3] Plaintiffs' claim that Defendants will modify its regular beverage offerings to remove caffeine or remove sugar at no charge for individuals with disabilities is false.  That Defendant offers certain products on its menu to all individuals—regardless of disability status—that may be more attractive to individuals with certain conditions does not in any way constitute a "special order".

[4] In *Karczweski,* the requested accommodation was the temporary modification of an item already in the defendant's inventory.

[5] As noted in Defendant's Motion to Dismiss, Non-Dairy Alternatives are not "accessible goods" only used by individuals with disabilities; rather, they are "goods" that may be enjoyed by any customer.

### 4. Defendant Provides All Individuals with a "Like Experience"

Defendant does not charge individuals with disabilities more for Non-Dairy Alternatives than it charges non-disabled individuals for Non-Dairy Alternatives. Indeed, disabled customers enjoy the same access and experience that non-disabled customers do. A modification lowering the price of drinks made with Non-Dairy Alternatives—below what would be charged to non-lactose intolerant customers for that same drink—for lactose intolerant customers is thus not necessary to provide a "like experience" to the two groups of customers. *Munoz*, 2024 U.S. Dist. LEXIS 201361 at *13-14.

Plaintiffs' reliance on *Baughman* for the contention that Defendant must not charge for Non-Dairy Alternatives or must offer Non-Dairy Alternatives for free to disabled individuals is misplaced. As Plaintiffs note, *Baughman* dealt with a plaintiff who requested that Disney modify its policy of only allowing wheelchairs and scooters so that she could use a stand-up Segway because it made it "easier for her to visit Disneyland's many attractions, concessions and facilities." *Baughman*, 685 F.3d at 1132, 1135. The Ninth Circuit found the plaintiff's requested modification for access to Disney's amusement parks was consistent with its case law, noting that if, by allowing the plaintiff to use her Segway in Disney's amusement parks, Disney "can make Baughman's experience less onerous and more akin to that enjoyed by its able-bodied patrons, it must take reasonable steps to do so." *Id*. at 1135-36. As Plaintiffs note in their Brief, the *Baughman* court discussed how public accommodations' facilities are used and the steps they must take to provide disabled individuals a like experience; it did not discuss pricing.

Of critical importance, the Ninth Circuit recognized that allowing disabled customers to use Segways in order to create a like experience "is supported by regulations" promulgated by the Department of Justice, which identify mobility devices and provide that public accommodations must make reasonable

accommodations for the use of power-driven devices such as Segways. *Id.* at 1136 (quoting 28 C.F.R. § 36.311(b)(1)). "The regulation discusses Segways at length, concluding 'that in the vast majority of circumstances' public accommodations will have to admit them." *Id.* There is no comparable DOJ "price" regulation applicable here.

The DOJ's Title III regulations, appendix commentary, and Technical Assistance Manual all support a determination that Defendant is not required to modify the prices it charges for the drinks it sells in order for Plaintiffs to have a "like experience." Neither the content or the price of the goods or services offered by a place of public accommodation is regulated; rather, access to the goods and services is what Title III addresses. The DOJ's regulations do not dictate the prices that may be charged for any products, nor should they. The law does not require — and was never intended to require — such a result. Nothing prohibits or even impedes Plaintiffs from ordering Non-Dairy Alternatives, and nothing in the law requires that Defendant charge Plaintiffs a lower price for Non-Dairy Alternatives.

### C. Plaintiff's Claim of Intentional Discrimination Fails

Plaintiffs appear to concede that their claim of intentional discrimination under the Unruh Act fails as they did not address Defendant's argument in this regard; rather, Plaintiffs appear to have abandoned this claim and are focusing solely on claims under the Unruh Act premised on violations of the ADA. Because Plaintiffs cannot state a claim under the ADA, their claims under the Unruh Act also fail.

### D. Plaintiffs Fail To State A Claim Of Unjust Enrichment Or Restitution

Plaintiffs incorrectly cite *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591-1593 (2008) for the proposition that the elements of an unjust enrichment claim are that "1) Defendant received a benefit; 2) Defendant's benefit was at the Plaintiff's expense; and 3) it would be unfair for the defendant to keep the benefit without compensating a proportionate amount to the plaintiff." Rather, *Peterson* provides that:

> The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank* 77 Cal.App.4th 723, 726 (2000). Here, plaintiffs received the benefit of the bargain. "[T]he 'mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.'" *Marina Tenants Assn. v. Deauville Marina Development Co.* 181 Cal.App.3d 122, 134 (1986). "There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." (*Comet Theatre Enterprises v. Cartwright,* 195 F.2d 80, 83 (9th Cir. 1952).

*Id.* at 1593 (dismissing unjust enrichment claim requesting return of insurance premiums due to defendant's unlicensed status because "plaintiffs received the benefit of the bargain[,]" namely, "the bargained for insurance at the bargained for price").

Here, Plaintiffs do not allege that they did not receive the Non-Dairy Alternatives that they paid for or that non-disabled individuals were not required to pay the same amount for the Non-Dairy Alternatives. As set forth above, the situation in the present matter is not akin to that in *Phillips*; Plaintiffs' reliance on this case is inapposite.

As set forth in Plaintiffs' allegations demonstrate that they got exactly the exchange they expected. They do not plead that they did not know about the upcharge when they ordered, that they were charged more than they expected, or that they did not receive the drink they ordered. Thus, Plaintiffs' own allegations demonstrate that they got "the exchange [they expected]," and that "[t]here is no equitable reason for invoking restitution." *See Peterson*, 164 Cal. App. 4th at 1593. As such, Plaintiffs' have not stated a claim for unjust enrichment or restitution.

### E. **Plaintiffs Should Not Be Permitted to Amend the Complaint**

Plaintiffs have already had two bites at the proverbial apple, having filed a Complaint and a First Amended Complaint. Importantly, Plaintiffs filed the First Amended Complaint in response to Defendant's Motion to Dismiss; they were on

notice of the arguments Defendant had with respect to the detail necessary to state a claim. They could have and should have included any and all relevant details in the First Amended Complaint. Permitting Plaintiffs to file a third Complaint will only result in additional expenditures on Defendant's behalf. As such, Defendant respectfully requests that Plaintiffs' request in this regard be denied.

## IV. CONCLUSION

For the reasons set forth herein, Defendant asserts that Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted and respectfully requests the Court grant its motion and dismiss Plaintiffs' Amended Complaint in its entirety.

Dated: January 2, 2025          JACKSON LEWIS P.C.

By: */s/ Karen Luh*_____
Karen Luh
Attorneys for Defendants
INTERNATIONAL COFFEE & TEA, LLC,
DBA THE COFFEE BEAN & TEA LEAF

4911-9921-1276, v. 1