UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-3132-GW-SKx | Date | January 15, 2025 |
|---|---|---|---|
| Title | *Carolyn Chaffin, et al. v. International Coffee & Tea, LLC* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) [18]

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [18] set for hearing on January 16, 2025 at 8:30 a.m.

:

Initials of Preparer   JG

***Chaffin, et al. v. Int'l Coffee & Tea, LLC***, Case No. CV 2:24-cv-03132-GW-(SKx)
Tentative Ruling on Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)

**I. Background**

In a First Amended Class Action Complaint ("FAC") filed September 6, 2024, *see* Docket No. 16, plaintiffs Carolyn Chaffin, Jennie Kim, Lori Singer, Michelle Irwin, Roxanne Sims, and Dawn Miller (collectively, "Plaintiffs") have asserted three claims against defendant International Coffee & Tea, LLC, dba The Coffee Bean & Tea Leaf ("Defendant"): 1) violation of Title III of Americans with Disabilities Act ("ADA"); 2) violation of California's Unruh Civil Rights Act ("Unruh"); and 3) unjust enrichment/restitution. Plaintiffs seek to represent both a "National Class" and a "California Subclass."[1] *See* FAC ¶ 99. Defendant has moved to dismiss each of the claims.

This case involves allegations that Defendant charges at least $0.80 for the use of non-dairy milk alternatives such as oat milk or almond milk, and including plant-based or lactose-free milk, when they are used in Defendant's coffee-based drinks, tea-based drinks, or other beverages – while the addition/substitution of whole milk or fat-free skim milk leads to no additional charge. *See, e.g., id.* ¶¶ 1, 3-4, 10. No distinction is made among the costs of the various non-dairy alternatives. *See id.* ¶ 6. Plaintiffs also allege that "[t]here is no material difference between the price of lactose-containing milks and the price of Non-Dairy Alternatives that would support" the extra charge, nor are there additional associated labor costs. *Id.* ¶¶ 8, 86. They also allege that "the retail price of Whole Milk (which is provided for free by Defendant) is the same, if not more, than their Non-Dairy Alternatives," *id.* ¶ 86, but that allegation is directly contradicted by the other details contained in that same paragraph (except at the very high-end-price for Whole Milk – $0.05 per fluid ounce – and the very low-end-price for almond milk – $0.04 per fluid ounce). *See id.*

---

[1] Defendant has raised the issue of choice of law with respect to any "National Class" in connection with the unjust enrichment/restitution claim. Based on Plaintiffs' Opposition – but not on any indication given in the FAC itself – it appears that Plaintiffs believe California law can be applied to that claim on a nationwide basis. Whether or not the Court would agree with that assertion is not presently before the Court.

Plaintiffs *generally* allege that they "suffer from lactose intolerance and milk allergies." *See id.* ¶ 2; *see also id.* ¶¶ 73, 84. However, none of the individual plaintiffs actually report that they personally suffer from a milk allergy. *See id.* ¶¶ 26-28, 34-36, 41-43, 49-51, 57-58, 64-65; *see also id.* ¶¶ 80-83 (paragraphs discussing consequences of milk allergy). They indicate that their lactose intolerance leads to adverse health consequences and physical symptoms if they consume dairy milk, such as bloating, excessive gas, abdominal pain, cramping, fatigue, diarrhea, nausea, severe stomach aches, and indigestion. *See id.* ¶¶ 28, 36, 44, 52, 59, 67; *see also id.* ¶ 74. They assert that both lactose intolerance and milk allergy are disabilities, *see id.* ¶¶ 15-16, limiting the major life activities of "drinking (and the nutritional benefits from ingesting drinks), and digestion," *id.* ¶ 75.

Defendant will modify its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for people with a variety of conditions, including hypertension, and will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for people with diabetes or who need to control their weight. *See id.* ¶ 13. Plaintiffs therefore allege that Defendant's practices constitute intentional discrimination because they "target[] . . . persons with lactose intolerance" through the additional charge, while accommodating other customers' dietary preferences and allergies free of charge. *Id.* ¶¶ 133-134. However, they also admit that Defendant "charg[es] all customers" the additional money for non-dairy alternatives. *Id.* ¶ 150.

## II. Analysis

### A. Applicable Procedural Standard

Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of the motion, the court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "[a] court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

### B. The Arguments/Claims

#### 1. ADA

Defendant raises several arguments for why Plaintiffs' ADA claim is flawed. Here, the Court will deal with two in particular that appear highly-problematic for

Plaintiffs.

First, Defendant correctly notes that, in order to have a claim under the ADA, Plaintiffs must be able to allege that they suffer from a "disability" within the meaning of the ADA. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020); *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). A "disability" means – so far as relevant here – "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. §§ 12102(1)(A).[2]

As Defendant observes here – and as recounted above – the individual plaintiffs in this matter all report suffering from lactose intolerance. Although the FAC also attempts to generally allege that Plaintiffs have milk allergies, that is not borne out by the individual allegations relevant to each of the particular representative plaintiffs. Defendant takes the position (and the Court has not been able to confirm otherwise via its own research) that there is no case supporting the view that lactose intolerance – as opposed to a milk allergy – *substantially* limits any major life activity such that it qualifies as a "disability" under the ADA.

In *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003), the Ninth Circuit instructed that a person "is substantially limited" by an impairment if he or she "is unable to perform or is significantly restricted in a major life activity." *Id.* at 1038. In that case, the court determined that – before it was added specifically to the list now existing at 42 U.S.C. § 12102(2)(A) – "eating" was a major life activity, but still that this "does not mean that every sub-type of the activity is also a major life activity." *Id.* at 1040. Thus, it held that "broadly speaking, eating is a major life activity," but that "eating specific types of foods . . . might or might not be a major life activity," giving the example that "[i]f a person is impaired only from eating chocolate cake, he is not limited in a major life activity because eating chocolate cake is not a major life activity." *Id.* In contrast, "peanut allergies might present a unique situation" because of the number of foods containing trace amounts "that could cause severely adverse reactions." *Id.*

---

[2] Defendant takes issue with whether any "major life activities" are involved here. However, the ADA includes as "major life activities" both "eating" and "the operation of a major bodily function, including . . . [the] digestive [and] bowel . . . functions." 42 U.S.C. § 12102(2)(A)-(B). "Drinking," however, is not a listed major life activity. *See id.*; *compare* FAC ¶ 75; Docket No. 23, at 2:21-23, 6:1-2. Drinking, not eating, is mentioned in the FAC (though digestion is also mentioned).

4

It is possible that a court might conclude that eating/consuming lactose is not a "major life activity," along the lines laid out by *Fraser*. But whether it would or would not be, lactose intolerance would still have to "substantially limit[]" such a major life activity. "[S]imply differ[ing] from the average person in how [one] performs a major life activity is patently insufficient for a substantial limitation," as is "merely suffer[ing] *some* limit." *Id.* Courts must "carefully separate those who have simple dietary restrictions from those who are truly disabled." *Id.* at 1041; *see also id.* ("Unlike a person with ordinary dietary restrictions, Fraser must monitor much more than what and how much she eats."); *Zongo v. Brott*, No. 21-407 (NEB/BRT), 2022 WL 2182196, *9 n.9 (D. Minn. Mar. 30, 2022) (Thorson, Mag. J.) ("[U]nder similar [ADA] claims, courts generally have rejected considering dietary issues even more limiting than an intolerance as constituting a disability."), *adopted*, 2022 WL 2181759 (D. Minn. June 16, 2022). No Ninth Circuit decision appears to indicate that *Fraser* is no longer good law on this point. *See, e.g.*, *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009).

Plaintiffs have not proven Defendant wrong about the absence of supporting decisions by pointing to a case that *has* determined lactose intolerance *is* a disability that substantially limits a major life activity (though they intimate that such cases exist). *See* Docket No. 23, at 1:23-2:2, 4:18-20, 5:22-25 & n.5. They attempt to rely on two cases (neither of which would be precedential even if they were on-point). In *Hebert v. CEC Entertainment, Inc.*, No. 6:16-CV-00385, 2016 WL 5003952 (W.D. La. July 6, 2016), the plaintiffs' son had a dairy allergy that might cause him to have a "life-threatening anaphylactic reaction" (and the defendant refused the parents' request to bring into the restaurant a safe meal from outside the restaurant). *Id.* at *1, 3. The Magistrate Judge handling the case, observed that "the plaintiffs [had] alleged that if their son eats dairy products, he may have an anaphylactic reaction that could result in death," and they had thus "alleged that he has a physical impairment that restricts him from eating the way most people in the general population eat," and "consequently [had] alleged that he is disabled as that term is defined in the ADA." *Id.* at *2. *Harris v. Adams*, No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020), which is unpublished and noncitable, found there to be a sufficient allegation – in a case involving an individual who suffered

5

from irritable bowel syndrome (exacerbated by the loss of her gallbladder), not lactose intolerance – of a violation of Unruh due to a restaurant's refusal to serve the plaintiff, but *not* for a violation of the ADA (though it did conclude the plaintiff had sufficiently alleged an ADA "disability"). *See id.* at *1, 3. Plaintiffs also have not directed the Court – outside of the noncitable/nonprecedential *Harris* – to a case that demonstrates that the symptoms they report experiencing when consuming lactose – something that Defendant does not *require* that they do by virtue of its pricing decisions[3] – amounts to a substantial limitation.

Instead, Plaintiffs appear to assert that, to constitute a disability within the meaning of the ADA, an impairment need only "limit[] a major life activity." *Id.* at 5:20-22. This is contrary to the plain language of 42 U.S.C. §§ 12102(1)(A). Beyond that, in support of their contention Plaintiffs simply point to a California Department of Education website, not to any *case* that supports their view in this regard (or to the wider proposition that lactose intolerance itself constitutes a disability). *See id.* at 5:22-25 & n.5.

In contrast, in a case involving virtually the same situation as present here (a coffee shop-operation charging extra for non-lactose-based additions to drinks), a court concluded that lactose intolerance is not a disability under the ADA, at least as pled in that case. *See Garland v. Dunkin Donuts LLC*, No. 23-cv-06621-SI, 2024 WL 2808653, *7 (N.D. Cal. May 31, 2024) ("Defendant does not challenge plaintiffs' position that lactose intolerance or a milk allergy could qualify as a disability under the ADA. Dunkin' instead argues that the plaintiffs here have not alleged sufficient facts to show their lactose intolerance or milk allergy plausibly meets the ADA standard. The Court agrees."). Though the symptoms suffered by the plaintiffs here are more individualized than in *Garland*, Plaintiffs still have not directed the Court to cases (other than *Harris*) concluding that such symptoms satisfy the applicable standard post-*Fraser*. *Cf. Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223 (5th Cir. 2011) (concluding that proposed

---

[3] *See* 42 U.S.C. § 12102(4)(D) (stating that, in construing the definition of "disability," "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); *id.*, § 12102(4)(E)(i)(IV) (stating that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . learned behavioral . . . modifications").

6

analysis of disability status "fails to take into account the admittedly modest dietary measures [the plaintiff] must take to mitigate the effects of his condition," and noting that requested holding "'would be to recognize all persons with . . . lactose intolerance . . . and various other eating-related impairments as disabled'") (quoting *Walker v. City of Vicksburg*, No. 5:06-cv-60-DCB-JMR, 2007 WL 3245169, at *8 (S.D. Miss. Nov. 1, 2007)); *Westbrook v. City of Meriden*, No. 3:10-CV-1329 (TPS), 2013 WL 172992, * 5 (D. Conn. Jan. 16, 2013).

With the foregoing explanation, the Court cannot conclude that Plaintiffs have sufficiently alleged a "disability" within the meaning of the ADA.

The second substantial problem with Plaintiffs' theory relates to the required element of discrimination through denial of a public accommodation. *See Lopez*, 974 F.3d at 1033. In Defendant's interpretation, Plaintiffs' theory is based on the idea that Defendant has imposed a "surcharge" on the use of non-dairy alternatives. The FAC does indeed characterize the charges in question as a "surcharge." *See, e.g.*, FAC ¶¶ 1, 3-4. However, Plaintiffs have also conceded that Defendant "charg[es] all customers" the additional money for non-dairy alternatives. *Id.* ¶ 150.

Under Ninth Circuit law, given this concession, the extra charge cannot be considered a "surcharge." At the very least, that would be because "[i]f nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure." *Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999); *see also Munoz v. Peets Coffee, Inc.*, No. 24-cv-01764-JST, 2024 WL 4700646, *3 (N.D. Cal. Nov. 5, 2024) ("Plaintiffs do not allege that only those with lactose intolerance or milk allergies are charged the increased pricing for drinks made with non-dairy alternatives.").

Plaintiffs' only response regarding Dare is that it is an ADA *Title II* case, *see id.* at 1170, and this case arises under *Title III*. See Docket No. 23, at 9:15-17. Yet, Defendants contend that the "definition" of "surcharge" is the same under both Title II and Title III. *See* Docket No. 24, at 8:9-11. However, although they appear to cite 28 C.F.R. § 35.130(f) and 28 C.F.R. § 36.310(c) in support of this proposition, Docket No.

7

18, at 13:24-14:5,[4] Section 36.310(c) does not, in fact, appear to have anything to do with surcharges.

On the topic of a "surcharge," Plaintiffs themselves direct the Court to 28 C.F.R. § 36.301(c) – notice the difference in subsection from that Defendant cited – but (like Section 35.130(f)) that provision does not *define* "surcharge." It does, however, state that "[a] public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities" for various purposes. 28 C.F.R. § 36.301(c). This is indeed much the same as what Section 35.130(f) says, though in connection with public entities instead of public accommodations. *See Munoz*, 2024 WL 4700646, at *2 ("Though *Dare* dealt with Title II, the language of the surcharge provision under Title II is nearly identical to that under Title III."). In that sense, Defendant's point is correct, even though definitions are not at issue. Even without the aid of a specific *definition* of the term, it is clear from the usage in both Sections 35.130(f) and 36.301(c) that the surcharge prohibition deals with charges applied *only* to individuals with disabilities, and not to others. As mentioned above, the FAC concedes that all those choosing non-dairy alternatives are charged the extra money, not only those who suffer from lactose intolerance or a milk allergy.

Unless Plaintiffs can explain why their "surcharge" allegations are not integral to, or required, for them to prevail on their ADA claim, this would appear to be a second reason why Plaintiffs could not proceed on that claim past the pleading stage based on the FAC. The Court considers a possibility of avoidance unlikely in light of the fact that Plaintiffs themselves lead with the allegation in the first sentence of their Opposition brief. *See* Docket No. 23, at 1:2-4 ("Defendant discriminates against Plaintiffs and putative class members by levying a surcharge for non-dairy alternatives that Plaintiffs have no choice but to pay because of their lactose intolerance, which is a disability under the ADA."); *see also id.* at 10:10-12. Of course, even if Plaintiffs could convince the Court that their "surcharge" allegations were not required for them to prevail under the ADA, the "disability" problem mentioned above would still remain.

---

[4] Docket No. 18 does not contain page numbers beyond page number 1. The Court's pagination, in reference to that document, treats the pages as if they were numbered consecutively following page number 1.

8

One way in which Plaintiffs attempt to convince the Court that their case should proceed is by relying on *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344, 2015 WL 7429497 (N.D. Cal. Nov. 23, 2015).  However, *Munoz*[5] – like *Garland*, another case pled against a coffee shop-operation charging extra for non-lactose-based additions to drinks[6] – pointed out that *Phillips* did not apply the *Dare* surcharge test.  In addition, *Munoz* concluded that *Phillips* was distinguishable because the plaintiffs in *Munoz* had not alleged "that Peet's has an entirely separate and more expensive 'dairy free' menu that contains identical items as those on its regular menu, including those items that are naturally dairy-free," and had not alleged "that Peet's directs customers with lactose intolerance or milk allergies to the more expensive menu items that include non-dairy alternatives."  *Munoz*, 2024 WL 4700646, at *3.  The exact same distinction applies here, even if the Court were to overlook *Phillips*' non-application of *Dare*.  As Defendant notes in its Reply, it too is not alleged to have a separate "'Dairy Free' menu to which it directs lactose intolerant individuals."  Docket No. 24, at 8:2-3.  For these same reasons, the Court is not convinced that *Phillips* supports Plaintiffs' case.

Finally, beyond surcharges and *Phillips*, to the extent Plaintiffs attempt to rely on the "like experience" theory under the line of authority including *Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012), involving use of Segways at Disneyland, or *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004), involving companion-seating in movie theaters, the Court would have one question for Plaintiffs:  what case under that line of authority can they cite that involves *goods*, as opposed to *services*, and, in particular, the *pricing* of those goods?  If they have no convincing response to this question, even if this line of cases might be one way around a necessary reliance on a surcharge theory, the Court has significant doubts that it would apply here.

For at least the two reasons expressed above, the Court has grave doubts about the viability of Plaintiffs' ADA claim, and is likely to dismiss it.

---

[5] *Munoz* was issued after Defendant filed its motion, but before Plaintiffs filed their Opposition.  Plaintiffs did not mention *Munoz* in their Opposition.  Defendant addressed it in its Reply.

[6] The defendant in *Munoz* did not dispute the plaintiffs' contention in that case that "individuals with lactose intolerance and milk allergies" are disabled within the meaning of the ADA.  *See Munoz v. Peets Coffee, Inc.*, No. 24-cv-01764-JST, 2024 WL 4700646, *2 (N.D. Cal. Nov. 5, 2024).

9

2.  Unruh

With respect to Plaintiffs' Unruh claim, Defendant argues that such legislation does not cover practices and policies that apply equally to all persons. Plaintiffs do not attempt to engage with this assertion.

Though Defendant does not argue this point in its opening brief (beyond merely pointing out the ADA/Unruh overlap, *see* Docket No. 18, at 5:19-6:3), *see id.* at 15:13-16:10, to the extent Plaintiffs' Unruh theory is predicated on a violation of the ADA, the problems with their ADA claim that are set forth above would be equally applicable to their Unruh claim. Plaintiffs walk into that argument via their assertion, in their Opposition, that "intentional discrimination is not required for a violation of the Unruh Act that is based upon a violation of the ADA." Docket. No. 23, at 14:5-7. If they cannot sustain their ADA theory, this observation takes them nowhere.[7]

Beyond that, they argue that they can sustain an Unruh claim where their disability was a motivating factor for Defendants denial of full and equal accommodations, advantages, facilities, privileges, or services. But their "motivating factor" theory appears to be based entirely on the fact that Defendant allegedly does not increase prices for other modifications (whole milk, fat-free milk, caffeine-free, and sugar-free). *See* Docket No. 23, at 15:3-10. That Defendant's practice may not be financially/economically-consistent, or even make financial/economic sense given Plaintiffs' allegations about cost-per-fluid-ounce, is seemingly a far cry from an assertion that individuals' lactose-intolerance status was a "motivating factor" for such decision (especially considering the FAC's concession that *all* individuals asking for such additions/substitutions to their drinks are charged the extra price). Although this is not an employment discrimination case,[8] this observation is much the same as the general principle that an employment decision does not have to make sense or be correct in order to avoid it supporting a discrimination case/demonstrating pretext. *See, e.g., Villiarimo v.*

---

[7] Defendant appears to believe that the ADA avenue is the *only* basis for Plaintiffs' Unruh claim. *See* Docket No. 24, at 12:17-22. This is a misread of Plaintiffs' Opposition brief. *See* Docket No. 23, at 14:13-20.

[8] Plaintiffs themselves rely upon an employment discrimination case in support of their argument here, *see* Docket No. 23, at 15:17-21 (citing *Chuang v. Univ. Cal. Davis Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)), so the Court does not believe it is far afield in making this observation here.

*Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("[C]ourts 'only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.'") (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)).

Plaintiffs' only citation in connection with their position that they have alleged enough to make a "motivating factor" showing is to *Abernathy v. Valley Medical Center*, No. C06-001 MJP, 2006 WL 1515600, at *3 (W.D. Wash. May 25, 2006). *Abernathy* is not an Unruh case. Nor do its facts have any similarity to the present action. Plaintiffs cite it and provide a parenthetical describing the case as "holding that plaintiff could establish intentional discrimination where defendant failed to provide plaintiff with a service that defendant 'routinely' provides others." Docket No. 23, at 15:11-13. Even if that principle could be extended to this case, Plaintiffs have admitted that *everyone* who requests non-dairy alternatives in their drinks from Defendant pays the extra charge. It does not – "routinely" or otherwise – provide others a service of "no extra charge" with respect to such additions/substitutions.

Instead of *Abernathy*, this Court again looks to *Munoz*, where the plaintiffs also had not alleged that *only those with lactose intolerance (or milk allergies)* were charged the extra cost for non-dairy alternatives. In *Munoz*, the court offered the following analysis of the plaintiffs' claim that the defendant had engaged in intentional discrimination in violation of Unruh:

> Given the variety of reasons unrelated to any medical disability for which one may order non-dairy alternative milk, Plaintiff has failed to make the necessary showing that Defendant acted with specific intent to discriminate against those with lactose intolerance or milk allergies in charging a higher price for such drinks. And Plaintiff's bare assertion that Peet's "created a surcharge targeted to persons with lactose intolerance" does not satisfy the showing required to plead intentional discrimination in the face of facially neutral pricing.

2024 WL 4700646, at *5. The Court agrees with the *Munoz* court's view, and the instant case is indistinguishable from the situation alleged to be the case there.

For the reasons explained above, the Court concludes Plaintiffs' Unruh claim is deficient.

### 3. Unjust Enrichment/Restitution

That leaves Plaintiffs' claim for "unjust enrichment/restitution."

With regard to this claim, Defendant first understandably complains that Plaintiffs did not identify which State's law should be considered to govern the claim. *See* Footnote 1, *supra*. They would be correct that this ambiguity alone would be reason enough to dismiss the claim. Beyond that, however, Defendant also argues that Plaintiffs cannot maintain such a claim both because they received the benefit of the bargain in receiving any drinks they purchased, and because – to the extent the claim involves the equitable remedy of restitution – they have an adequate remedy at law under Unruh, and thus cannot seek equitable remedies. *See Peterson v. Cellco P'ship*, 164 Cal.App.4th 1583, 1596 (2008) (rejecting attempt to obtain restitution via unjust enrichment claim because plaintiffs "received the benefit of the bargain" and "'[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected'") (quoting *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952)); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311-12 (9th Cir. 2022) (concluding that plaintiff could not bring equitable unfair competition law claim in federal court because he possessed adequate legal remedy in Consumers Legal Remedies Act claim despite that latter claim being time-barred).

In terms of this final claim, Plaintiffs assert that it is "not the case" that they received the benefit of their bargain because "they paid more than the beverage was worth" because of the "surcharge," and because "[n]on-disabled persons paid less for those beverages than Plaintiffs and the class." Docket No. 23, at 16:8-11. The latter assertion is contradicted by the plain allegations of the FAC, *see* FAC ¶ 150, and, as noted above, there was no "surcharge," meaning that this cannot be the basis for a claim that Plaintiffs "paid more" than their drink "was worth." As Defendant accurately states in its Reply brief, "Plaintiffs do not allege that they did not receive the Non-Dairy Alternatives that they paid for or that non-disabled individuals were not required to pay the same amount for the Non-Dairy Alternatives." Docket No. 24, at 13:13-15.

Beyond that, Plaintiffs themselves indicate that their unjust enrichment claim "should be construed as a claim seeking restitution." Docket No. 23, at 16:12. Yet, they do not attempt in any way to deal with Defendant's alternative argument that such a claim cannot proceed (at least in federal court) because Plaintiffs plainly have an adequate remedy at law.

For both of these reasons, Plaintiffs' "unjust enrichment/restitution" claim is flawed, and for the latter of the two, the Court cannot conceive how Plaintiffs could amend to cure the problem. As such, the Court will grant Defendant's motion to dismiss this particular claim *without* leave to amend.

### III. Conclusion

Plaintiffs point to the liberality principle underlying the question of whether leave to amend should be allowed upon dismissal. Defendant believes this was already Plaintiffs' second "bite[] at the proverbial apple." Docket No. 24, at 13:26. But Plaintiffs' "second bite" was not in response to any court order, just in response to Defendant's contentions in their first, ultimately-mooted, motion to dismiss. As such, the Court does not consider the FAC to be a "second bite" after having once been *authoritatively* instructed or informed that their allegations were deficient. To the extent Defendant complains that a further amendment will only result in "additional expenditures" for Defendant, that is not a basis for denying leave to amend. Except as to the unjust enrichment/restitution claim, leave to amend will be granted here (as was the case in *Munoz* and *Garland*) even if the Court has doubts that Plaintiffs will be able to amend around the problems identified above. The unjust enrichment/restitution claim, however, is dismissed without leave to amend.