Karen Luh (SBN 243256)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: (213) 689-0404
Fax: (213) 689-0430
Karen.Luh@jacksonlewis.com

Attorneys for Defendant
INTERNATIONAL COFFEE & TEA, LLC,
dba THE COFFEE BEAN & TEA LEAF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CHAFFIN, JENNIE KIM, LORI SINGER, MICHELLE IRWIN, ROXANNE SIMS, and DAWN MILLER, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL COFFEE & TEA, LLC, dba THE COFFEE BEAN & TEA LEAF<br><br>Defendant. | Case No.: 2:24-cv-03132-GHW-SK<br><br>**CLASS AND REPRESENTATIVE ACTION**<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:  May 15, 2025<br>Time:  8:30 a.m.<br>Court: 9D (9th Floor)<br>Judge: Hon. George H. Wu<br><br>Second Amended Complaint Filed: February 14, 2025 |

# **NOTICE OF MOTION**

TO THE HONORABLE COURT, PLAINTIFFS JENNIE KIM, LORI SINGER, MICHELLE IRWIN, ROXANNE SIMS, DAWN MILLER, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 15, 2025 at 8:30 a.m., in Courtroom 9D of the above-entitled Court located at 350 West 1st Street, 9th Floor, Los Angeles, CA 90012, and before United States Magistrate Judge George H. Wu, Defendant International Coffee & Tea, LLC dba The Coffee Bean & Tea Leaf ("Defendant" or "The Coffee Bean") will move to dismiss Plaintiffs' Jennie Kim, Lori Singer, Michelle Irwin, Roxanne Sims, Dawn Miller ("Plaintiffs'") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is based on the following grounds: (1) Plaintiffs are not disabled within the meaning of the Americans with Disabilities Act; (2) Defendant did not deny Plaintiff a public accommodation as public accommodations are not required to provide separate accessible goods or sell them at the same price; and (3) Plaintiff fails to allege sufficient facts to support claims of intentional discrimination under the Unruh Act, and (4) this Court has already dismissed Plaintiffs' claim of unjust enrichment or restitution without leave to amend.  Tentative Ruling, Docket No. 29, p. 14..

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 24, 2025, and on March 26, 2025. Defendant's Motion is based this Notice of Motion; the following Memorandum of Points and Authorities; the arguments presented during hearing on this matter; and any other argument, document, or fact that the Court may properly consider.

By:*/s/ Karen Luh*_____
Karen Luh
Attorneys for Defendants
INTERNATIONAL COFFEE & TEA, LLC,
DBA THE COFFEE BEAN & TEA LEAF

1

2

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 4

II.   FACTUAL BACKGROUND ........................................................................ 5

III.  LEGAL ARGUMENT ................................................................................ 6

 A.  Legal Standard ...................................................................................... 6

 B.  Plaintiffs Are Not Disabled Within the Meaning of the ADA and Do Not Plausibly Allege as Much ........................................................................ 7

 C.  Defendant Did Not Deny Plaintiffs a Public Accommodation ..................... 13

 E.  Plaintiff's Claim of Intentional Discrimination Fails .................................. 17

 F.  Plaintiffs Fail To State A Claim Of Unjust Enrichment Or Restitution ......... 19

IV.   CONCLUSION ........................................................................................ 19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alphonsis v. Century Reg'l Det. Facility*,
   2017 U.S. Dist. LEXIS 228013 (C.D. Cal. 2017) ............................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 7

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) .............................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 7

*Fraser v. Goodale*,
   342 F.3d 1032 (9th Cir. 2003) ...................................................................... 10, 11

*Gitson v. Trader Joe's Co.*,
   No. 13-CV-01333-VC, 2015 U.S. Dist. LEXIS 170401 (N.D.Cal.
   2015) .................................................................................................................. 14

*Jancik v. Redbox Automated Retail, LLC*,
   2014 U.S. Dist. LEXIS 67223 (9th Cir. 2014) ................................................... 14

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007) .............................................................................. 8

*Munoz v. Peets Coffee, Inc.*,
   2024 U.S. Dist. LEXIS 201361 (N.D.Cal. 2024) .................................. 16, 17, 18

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .............................................................................. 6

*Noll v. Carlson*,
   809 F.2d 1446 (9th Cir. 1987) ............................................................................ 7

*Painter v. Blue Diamond Growers*,
   757 F. App'x 517 (9th Cir. 2018) ....................................................................... 14

*Rodriguez v. Putnam*,
   2013 U.S. Dist. LEXIS 67090 (C.D. Cal. 2013) ............................................... 11

*Thompson v. Potter*,
   252 Fed. Appx. 175 (9th Cir. 2007)........................................................................ 11

*Watkins v. Westin*,
   2023 U.S. Dist. LEXIS 142005 (E.D. Cal. 2023) ............................................... 12

**California Cases**

*Martinez v. Cot'n Wash, Inc.*,
   81 Cal. App. 5th 1026 (2022) .............................................................................. 17

*Turner v. Ass'n of Am. Med. Coll.*,
   85 Cal. Rptr. 3d 94 (Cal. Ct. App. 2008) ........................................................... 18

**Federal Statutes**

42 U.S.C.
   § 12102(1).............................................................................................................. 8
   §§ 12182-12188 (1990) ......................................................................................... 7
   §§ 12182(a)-(b) (1990) .................................................................................... 8, 13

ADA (Civ. Code
   § 51, subd.(f)) ...................................................................................................... 17

Americans with Disabilities Act of 1990 Title III, 42 U.S.C.
   § 12010 (1990).............................................................................................*passim*

While the ADA Amendments Act of 2008, 42 USCS
   § 12102 .................................................................................................................. 10

**California Statutes**

Cal. Civ. Code
   § 51 et seq. ............................................................................................................. 4
   § 51(f) (2016)......................................................................................................... 8

**Other Authorities**

28 C.F.R. § 35.130(f).................................................................................................. 15

28 C.F.R. § 36.301(c) ................................................................................................. 15

Federal Rule of Civil Procedure 12(b)(6).............................................................. 6, 7

*Tech. Assist. Man. III-4.0000* ................................................................................. 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In the present matter, Plaintiffs claim that The Coffee Bean has violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12010 (1990) ("ADA" or "Title III") and the Unruh Act, Cal. Civ. Code § 51 et seq., because it imposes charges for non-dairy milks such as almond milk, oat milk, or soy milk ("Non-Dairy Alternatives") and it offers cow's milk ("Dairy Milk") for free, in addition to a claim for unjust enrichment, which this Court has already dismissed.  Plaintiffs claim that they "will suffer adverse health effects if they ingest milk-containing products, including stomach pain, digestive tract inflammation, bloating, bowel irregularities and vomiting" and that "Defendant violates the ADA because …[it] imposes a surcharge on [persons with lactose intolerance], purportedly to cover the costs of such measures." Second Am. Compl. ¶¶ 100, 167.    A condition that may cause a stomachache after drinking Dairy Milk is not a disability under the ADA as there is no substantial limitation nor is there a major life activity involved.  For this reason alone, Plaintiffs have not stated a claim upon which relief may be granted.

The troubles with the Amended Complaint do not end there.  Even assuming that Plaintiffs are disabled, which they are not, they base their claims on the inaccurate assertion that Non-Dairy Alternatives are accessible substitutes for Dairy Milk, as opposed to mere goods.  There are myriad reasons why one would order Non-Dairy Alternatives that have nothing to do with disabilities or lactose intolerance, including taste and diet.  The additional cost for Non-Dairy Alternatives is applied across the board to all who order it; individuals with lactose intolerance are not singled out.  Moreover, it is well-settled that the ADA does not regulate goods.  As such, Plaintiffs have failed to articulate a violation of the ADA by virtue of the fact that Defendant charges more for Non-Dairy Alternatives than for Dairy Milk.

Finally, Plaintiffs' claim for a disgorgement of profits for unjust enrichment or

restitution cannot be sustained.  Plaintiffs received the benefit of the bargain, so there was no unjust enrichment.  Restitution is an equitable remedy, which is inappropriate when adequate remedies exist at law, which Plaintiffs have explicitly requested.  For this reason, the Court granted Defendant's Motion to Dismiss this claim without leave to amend.  Tentative Ruling, Docket No. 29, p. 14.  This claim is barred by the doctrine of res judicata.

As discussed more fully herein, the Second Amended Complaint should be dismissed in its entirety as these deficiencies preclude the Second Amended Complaint from stating a claim upon which relief may be granted.

## II.    FACTUAL BACKGROUND

Plaintiffs Chaffin, Irwin, Kim, Singer, Sims, and Miller reside in California and claim to be lactose intolerant. Second Am. Compl. ¶¶ 26, 29, 40, 52, 64, 75, 86. Plaintiffs each claim that "as a result of her lactose intolerance, [Plaintiff] is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives." Second Am. Compl. ¶¶ 29, 40, 52, 64, 75, 86. The Plaintiffs all claim that they will suffer bloating, gas, and stomach pain if they ingest Dairy Milk. Second Am. Compl. ¶¶ 31, 42, 55, 52, 67, 77, 89.  Chaffin also claims she will suffer indigestion, cramping and fatigue if she ingests Dairy Milk.  Second Am. Compl. ¶ 31.  Irwin also claims she will suffer indigestion, cramping, fatigue, nausea, and diarrhea if she consumes Dairy Milk. Second Am. Compl. ¶ 42.  Kim also claims she will suffer fatigue and diarrhea if she consumes Dairy Milk.  Second Am. Compl. ¶ 55.  Singer also claims she will suffer diarrhea if she consumes Dairy Milk.  Second Am. Compl.  ¶ 67.  Sims also claims she will suffer indigestion if she consumes Dairy Milk.  Second Am. Compl.  ¶ 77.  Miller also claims she will suffer diarrhea and cramping if she consumes Dairy Milk.  Second Am. Compl. ¶ 89.

Plaintiffs allege they purchased coffee-based drinks, tea-based drinks, or other beverages that contained Non-Dairy Alternatives, such as oat milk or almond milk,

at Defendant's retail shops in California, Nevada, Arizona, or Oregon. Second Am. Compl. ¶ 5. Plaintiffs allege that they were charged at least an $0.80 surcharge to substitute a Non-Dairy Alternative for Dairy Milk and acknowledge that all customers who order Non-Dairy Alternatives in their beverages pay the additional surcharge. Second Am. Compl. ¶¶ 7, 192. Plaintiffs assert that whole Dairy Milk has a retail price of $0.03-0.05 per fluid ounce and coconut, oat, and soy milk sell for between $0.06-0.07 per fluid ounce and almond milk sells for $0.04-0.07 per fluid ounce. Second Am. Compl. ¶ 112. Plaintiffs then erroneously allege that "the retail price of Whole Milk (which is provided for free by Defendant) is the same, if not more, than their Non-Dairy Alternatives." Second Am. Compl. ¶ 112.

Plaintiffs assert the following allegations for the first time in the Second Amended Complaint:

- On at least one occasion, [plaintiff] asked the server to waive the Surcharge on items with Non-Dairy Alternatives due to her lactose intolerance. The server declined to do so.

- Defendant has a separate section on its menu board for its Non-Dairy Alternatives. This separate menu lists the charge that customers must pay for Non-Dairy Alternatives.

Second Am. Compl. ¶¶ 35, 46, 58, 70, 81, 94, 121.

Plaintiffs also note that Defendant imposes an upcharge on all customers who wish to customize a drink with Non-Dairy Alternatives. Second Am. Compl. ¶ 192.

## III.  **LEGAL ARGUMENT**

### A. **Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a claim presented in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. *Balistreri v. Pacifica Police Dep't*,

901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (emphasis added). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Naked assertions, "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In short, a court must dismiss a complaint if it fails to allege sufficient facts to establish a plausible, as opposed to merely possible, entitlement to relief. *See Iqbal*, 566 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). If the court finds the complaint fails to state a plausible claim and it is clear that the deficiencies of the complaint could not be cured by amendment, dismissal without leave to amend is appropriate. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

## B. **Plaintiffs Are Not Disabled Within the Meaning of the ADA and Do Not Plausibly Allege as Much**

Title III of the Americans with Disabilities Act of 1990 prohibits discrimination by places of public accommodation. 42 U.S.C. §§ 12182-12188 (1990). As a general rule, Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the

major life activities . . ."  42 U.S.C. § 12102(1).

    In the disability context, California state law operates similarly to the ADA, as the Unruh Act provides that any violation of the ADA necessarily "shall constitute a violation of [the Unruh Act]." Cal. Civ. Code § 51(f) (2016); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). A Title III discrimination claim, and by extension the Unruh Act, is premised on the following elements: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b) (1990).

    Thus, in order to state a claim for a violation of Title III of the ADA, a plaintiff must first plead that he or she is disabled within the meaning of the Act.  The Second Amended Complaint in the present matter is missing this critical element.  Indeed, Plaintiffs utterly fail to identify any major life activities that are substantially limited by any impairment. Instead, they simply state that they suffer from "lactose intolerance" and provide a list of potential symptoms that they suffer if they drink Dairy Milk.  Second Am. Compl. ¶¶ 29, 31, 40, 42, 52, 55, 64, 67, 75, 77, 86, and 89.  At no point do Plaintiffs identify any major life activities in which they are substantially limited.  At best, Plaintiffs state that they suffer digestive upset on the occasions that they ingest milk, implying that consuming lactose is a major life activity and that belly pain and the like is a substantial limitation.  Second Am. Compl. ¶¶ 101, 103 ("Plaintiffs' disability limits the major life activities of drinking [Dairy Milk] and the nutritional benefits from ingesting drinks), and digestion [of Dairy Milk]"; "Persons with lactose intolerance and milk allergies experience various levels of reactions to the ingestion of milk and milk-containing products, including a bloated stomach, intestinal gas, nausea and vomiting, stomach pain and cramping, and diarrhea").  Courts in the Ninth Circuit and throughout the country have held that

similar allegations fail to state a claim upon which relief may be granted.

Notably, this Court dismissed this claim without prejudice and with leave to amend to add factual allegations regarding Plaintiffs' alleged physical impairments and how they substantially limit a major life activity. Plaintiffs' allegations in the Second Amended Complaint regarding their lactose intolerance and the impacts of lactose intolerance on their lives are identical to those in the Amended Complaint. As the Court has already opined that Plaintiffs have not sufficiently alleged a disability pursuant to the ADA in the Amended Complaint (Tentative Ruling, Docket No. 29, p. 8), and as Plaintiffs have not changed a single word regarding their physical conditions in the Second Amended Complaint, it logically follows that Plaintiffs have not sufficiently alleged a disability pursuant to the ADA in the Second Amended Complaint.

### 1. Lactose Intolerance Is Not a Disability Under the ADA

As a threshold matter, lactose intolerance is not a disability under the ADA. Regardless of whether Plaintiffs assert that consuming Dairy Milk is a major life activity (it is not) or whether they claim that they are substantially limited in the major life activity of digestion (they are not), Plaintiffs' condition fails to meet the definition of "disability" under the ADA. Many courts, including this one, have examined the issue of whether an allergy to a specific food is a disability, and have consistently held that it is not, barring unusual circumstances not identified here. Notably, in the present matter, none of the Plaintiffs suffer from milk allergies; rather, they have a difficult time digesting lactose. Second Am. Compl. ¶¶ 29, 40, 52, 64, 75, and 8626. Their bodies do not produce histamines in response to consuming milk, and they do not suffer any serious consequences such as anaphylaxis. Second Am. Compl. ¶¶ 106-108. That courts have held that more limiting and potentially dangerous conditions are not a disability is dispositive on the issue of whether lactose intolerance is a disability—it is not.

Plaintiffs cannot seriously contend that consuming Dairy Milk or any specific beverage is a major life activity; to the extent that they do, the Ninth Circuit has definitively answered that question in the negative: "If a person is impaired only from eating chocolate cake, he is not limited in a major life activity *because eating chocolate cake is not a major life activity*." *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003) (emphasis added). While the *Fraser* court did not specifically address Dairy Milk, the Ninth Circuit's admonition in this regard applies to this situation. While the ADA Amendments Act of 2008 ("ADAAA"), 42 USCS § 12102, expanded the definition of disability, it did not go so far as to include allergies to specific menu items. To the contrary, the ADAAA defines major life activities to include the following:

> Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working… functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.*

Notably absent is any mention of drinking in general or an inability to ingest any specific item. The law and common sense dictate that lactose intolerance, without more, is not a disability for purposes of the ADA as consuming Dairy Milk is not a major life activity. Indeed, many people avoid Dairy Milk because they are vegans or because they simply do not like it; these individuals live full lives without accommodation. Plaintiffs' alleged inability to digest Dairy Milk does not satisfy the first prong of a claim under Title III of the ADA as they are not "disabled."

Plaintiffs also do not meet the definition of disability under the ADA as they are not substantially limited in any major life activity. This Court dismissed a case premised on a plaintiff's peanut allergy, holding that "assuming eating to be a major life activity, minimal limitation on it, like the one at bar, *does not amount to a*

*substantial limitation.*" *Rodriguez v. Putnam,* 2013 U.S. Dist. LEXIS 67090, *15 (C.D. Cal. 2013) (emphasis added) (holding that the plaintiff's peanut allergy, which caused shortness of breath that required that the plaintiff receive oxygen, was not a disability under the ADA). *See also Thompson v. Potter*, 252 Fed. Appx. 175, 176 (9th Cir. 2007) (citing *Coons v. Sec'y of the U.S. Dept. of the Treasury*, 383 F.3d 879, 885 (9th Cir. 2004)) (Holding that the plaintiff failed to raise an issue of material fact that his allergic reaction to wax fumes constitutes a qualified disability, as he "present[ed] no evidence or legal authority to show that his impairments substantially limit any major life activities . . .").

While the *Fraser* court recognized that food allergies, if severe and pervasive enough, may constitute a disability, the factual allegations of the Amended Complaint in the present matter make clear that Plaintiffs do not suffer from a milk allergy—only lactose intolerance—and the only impact to individuals with lactose intolerance is gas, bloating, belly pain, and the like *i.e.*, short-term digestive upset. Second Am. Compl. ¶¶ 31, 42, 55, 52, 67, 77, and 8928.

Chaffin also claims that she feels embarrassed by her gas which causes her to avoid social gatherings, Irwin and Sims claim that their lactose intolerance "affects" their work, family and social activities, and Miller states that she likes being near a bathroom after consuming Dairy Milk.[1]  Second Am. Compl. ¶¶ 32, 43, 78, 91. These are not substantial limitations on any major life activity, nor are they a direct result of consuming Dairy Milk.  Chaffin makes clear that her embarrassment is why she avoids social interactions—she is not physically unable to interact with others because of her lactose intolerance.  Second Am. Compl. ¶ 32.   Irwin and Sims' generic statement that their lactose intolerance "affects" their work, social, and family interactions is far too vague to describe a substantial limitation on a major life activity, and they do not connect their lactose intolerance to this alleged disruption.

---

[1] Notably, Kim and Singer do not describe any impact their lactose intolerance has on their lives, other than minor stomach upset.

Second Am. Compl. ¶¶ 43, 78. There is nothing preventing Miller from being away from a bathroom other than her psychological discomfort; moreover, being near a bathroom is certainly not a major life activity. Second Am. Compl. ¶ 91.

While uncomfortable or frustrating, Plaintiffs' physical symptoms are minimally disruptive minor nuisances. They are not severely adverse reactions that rise to the level of a "substantial limitation" on any major life activity. *Watkins v. Westin,* 2023 U.S. Dist. LEXIS 142005, *11-12 (E.D. Cal. 2023) (citing *Wilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996) ("Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.")). *See also Alphonsis v. Century Reg'l Det. Facility*, 2017 U.S. Dist. LEXIS 228013, *33 (C.D. Cal. 2017) (Plaintiff describes two allergic reactions: when she "collapsed" at dinner in 2015 after eating dairy products, and then again sometime later when creamer "tore through" her skin. She thus appears to allege a dairy allergy. The limitations considered in *Fraser* were far more severe than what Plaintiff has alleged here. She has not adequately explained how her major life activity of eating is sufficiently impacted to constitute a disability under the ADA. She only describes two instances where she has suffered an allergic reaction while in jail, neither of which appear to have particularly severe (e.g., she does not allege that she was hospitalized)).

As this Court has noted:

> [S]imply differ[ing] from the average person in how [one] performs a major life activity is patently insufficient for a substantial limitation," as is "merely suffer[ing] some limit." *Fraser*, 342 F.3d at 1040. Courts must "carefully separate those who have simple dietary restrictions from those who are truly disabled." *Id.* at 1041; see also id. ("Unlike a person with ordinary dietary restrictions, Fraser must monitor much more than what and how much she eats."); *Zongo v. Brott*, No. 21-407 (NEB/BRT), 2022 WL 2182196, *9 n.9 (D. Minn. Mar. 30, 2022) (Thorson, Mag. J.) ("[U]nder similar [ADA] claims, courts generally have

1
2
3

> rejected considering dietary issues even more limiting than an intolerance as constituting a disability."), adopted, 2022 WL 2181759 (D. Minn. June 16, 2022).

4

Tentative Ruling, Docket No 29, p.6.

5

6

7

8

9

10

Thus, even if consuming Dairy Milk is a major life activity (which it is not), lactose intolerance does not substantially limit doing so.  Plaintiffs have not identified either a major life activity nor have they described a substantial limitation of *any* activity sufficient to meet the definition of "disability."  As such, Plaintiffs have failed to state a claim under the ADA and dismissal of Plaintiffs' Second Amended Complaint is warranted.

11

### C. Defendant Did Not Deny Plaintiffs a Public Accommodation

12

13

14

15

16

17

18

19

In addition to pleading that he or she is disabled, a plaintiff in a Title III action must show that he or she was denied public accommodations by defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b) (1990).  Plaintiffs fail to adequately allege any such denial.  Plaintiffs claim that "Defendant violates the ADA because…it fails to make modifications to person with lactose intolerance and milk allergies but instead imposes a surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material difference between the cost of regular milk and Non-Dairy Alternatives." Second Am. Compl. ¶ 167.  In

20

21

22

23

24

25

making this statement, Plaintiffs imply that Defendant only imposes the fee for Non-Dairy Alternatives on individuals with lactose intolerance and that Defendant must offer Plaintiffs Non-Dairy Alternatives for free and that failure to do so violates the ADA.  Plaintiffs' theory of liability is based on the misguided premise that Non-Dairy Alternatives are merely accessible substitutes for Dairy Milk.  This is an incorrect statement of the facts and the law.

26

27

28

As a threshold matter, Defendant imposes a fee for Non-Dairy Alternatives on all customers, not just individuals who are lactose intolerant.  Second Am. Compl. ¶ 192.  This is because Non-Dairy Alternatives are goods that anyone may enjoy; they

are not accessible goods such as Braille books.  Indeed, it is well-settled that Non-Dairy Alternatives and Dairy Milk are different products with different taste and nutritional profiles.  *See Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) (almond milk and dairy milk are "two distinct food products"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 U.S. Dist. LEXIS 170401, at *4 (N.D.Cal. 2015) (soy milk and dairy milk were "two distinct products").  Individuals without disabilities enjoy Non-Dairy Alternatives for a variety of reasons, including taste and diet.  Thus, Non-Dairy Alternatives are not "accessible or special goods", nor are they "measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide [any] individual or group [with a disability] with the nondiscriminatory treatment required by the [ADA]."  Second Am. Compl. ¶¶ 159, 160.  Rather, they are simply goods.  As it is well settled that "the ADA does not regulate the content and characteristics of goods," Defendant may price its goods in any manner that it likes without running afoul of the ADA.  *Jancik v. Redbox Automated Retail, LLC,* 2014 U.S. Dist. LEXIS 67223, *9 (9th Cir. 2014) (holding that "Title III does not apply to the goods in a retailer's inventory").  As such, Plaintiffs' contention that Defendant imposes a "surcharge" on Non-Dairy Alternatives is not an accurate statement, nor is it a violation of the law.  Therefore, the Amended Complaint, which is based on this premise, fails to state a claim upon which relief may be granted.

Moreover, because the fee is charged to all individuals regardless of disability status, the fee is not an impermissible "surcharge" that is prohibited by the ADA. The Ninth Circuit employs a two-part test in *Dare v. California* to evaluate whether a cost constitutes an unlawful surcharge. 191 F.3d 1167, 1171 (9th Cir. 1999).  While *Dare* involved a Title II claim, the language of the surcharge provision is the same for Title II and Title III of the ADA and it is clear from the usage of the term "surcharge" in

both Title II and Title III that the prohibition on the imposition of a surcharge applies

only to charges imposed on individuals with disabilities and not on others.  Tentative

Ruling, Docket No. 29, p. 9 (citing *Munoz v. Peets Coffee, Inc*., 2024 U.S. Dist.

LEXIS 201361, *2 (N.D.Cal. 2024)).  Title II and Title III explain that a public entity

or public accommodation, respectively, may not impose a surcharge:

> on a particular individual with a disability or any group of individuals
> with disabilities to cover the costs of measures, such as the provision of
> auxiliary aids, barrier removal, alternatives to barrier removal, and
> reasonable modifications in policies, practices, or procedures, that are
> ***required*** to provide that individual or group with the nondiscriminatory
> treatment required by the Act or this part.

28 C.F.R. § 35.130(f); 28 C.F.R. § 36.301(c) (emphasis added).  *Dare* sets forth the

two-part test for evaluating whether a surcharge is unlawful as follows:

> In order to evaluate whether a fee constitutes a surcharge that violates
> Title II of the ADA, we conduct a two-part inquiry.  First, as a threshold
> matter, we consider whether the measure for which California levies the
> fee is "required to provide that individual or group nondiscriminatory
> treatment" as mandated by the ADA. 28 C.F.R. § 35.130(f).    If
> California charges for a measure not required under the ADA, the
> inquiry ends; 28 C.F.R. § 35.130(f) only forbids surcharges for
> "required" measures.

> Second, we evaluate whether the fee for the measure is a surcharge; in
> other words, we consider whether it constitutes a charge that
> nondisabled people would not incur.  If nondisabled people pay the same
> fee for an equivalent service, the charge to disabled people would not
> constitute a surcharge on a "required" measure.

191 F.3d 1167, 1171 (9th Cir. 1999).

Plaintiffs' argument fails on both prongs of the test.  Regarding the first prong,

providing Non-Dairy Alternatives is not required by the ADA to provide non-

discriminatory treatment.  Indeed, the addition of any milk at all is not even necessary

to enjoy products offered by Defendant.  Any person, whether he or she is lactose

intolerant or not, who does not want to pay the additional price for a coffee drink

with Non-Dairy Alternatives can simply enjoy a beverage that does not include Dairy Milk or Non-Dairy Alternatives.

Regarding the second prong, Plaintiffs have admitted that the upcharge for Non-Dairy Alternatives applies to *all* customers.  Second Am. Compl.  ¶ 192. The Title III Technical Assistance Manual also makes clear that a surcharge is only unacceptable if it is charged "only" to people with disabilities.  *ADA Title III Tech. Assist. Man. III-4.0000* ("Although compliance may result in some additional cost, a public accommodation may not place a surcharge only on particular individuals with disabilities or groups of individuals with disabilities to cover these expenses").  That Defendant treats all of its customers equally in this regard precludes Plaintiffs from stating a claim of discrimination under Title III of the ADA.

*Munoz* is directly on point.  In *Munoz,* the Northern District of California held that an across-the-board charge for Non-Dairy Alternatives is not an unlawful surcharge and granted the defendant's Motion to Dismiss. 2024 U.S. Dist. LEXIS 201361 (N.D.Cal. 2024).  Notably, the *Munoz* case was brought by one of the plaintiffs in the present matter—Michelle Irwin—along with others, and asserted allegations virtually identical to those of the present matter:  that the defendant discriminates against individuals with lactose intolerance or milk allergies by charging more for beverages made with non-dairy alternatives than those made with dairy milk, despite no additional labor or ingredient cost required.[2] *Id.* at *2.   As such, the situation in *Munoz* is completely analogous to that of the present matter and this Court should adopt its holding—that Defendant did not impose an unlawful surcharge on disabled customers and therefore did not violate the ADA.

### D.    Defendant Provides All Individuals with a "Like Experience"

Defendant does not charge individuals with disabilities more for Non-Dairy Alternatives than it charges non-disabled individuals for Non-Dairy Alternatives.

---

[2] The attorneys representing the plaintiffs in *Munoz* also represent Plaintiffs in the present matter.

Indeed, disabled customers enjoy the same access and experience that non-disabled customers do. A modification lowering the price of drinks made with Non-Dairy Alternatives—below what would be charged to non-lactose intolerant customers for that same drink—for lactose intolerant customers is thus not necessary to provide a "like experience" to the two groups of customers. *Munoz*, 2024 U.S. Dist. LEXIS 201361 at *13-14.

The DOJ's Title III regulations, appendix commentary, and Technical Assistance Manual all support a determination that Defendant is not required to modify the prices it charges for the drinks it sells in order for Plaintiffs to have a "like experience." Neither the content or the price of the goods or services offered by a place of public accommodation is regulated; rather, access to the goods and services is what Title III addresses. The DOJ's regulations do not dictate the prices that may be charged for any products, nor should they. The law does not require — and was never intended to require — such a result. Nothing prohibits or even impedes Plaintiffs from ordering Non-Dairy Alternatives, and nothing in the law requires that Defendant charge Plaintiffs a lower price for Non-Dairy Alternatives.

### E. <u>Plaintiff's Claim of Intentional Discrimination Fails</u>

"A plaintiff can recover under the [Unruh Civil Rights Act] on two alternate theories: (1) a violation of the ADA (Civ. Code, § 51, subd. (f)); or (2) denial of access to a business establishment based on intentional discrimination." *Martinez v. Cot'n Wash, Inc*., 81 Cal. App. 5th 1026, 1035 (2022) (citing Martinez v. San Diego County Credit Union (2020) 50 Cal.App.5th 1048, 1059 [264 Cal. Rptr. 3d 600] (San Diego)).

As noted above, there is no violation of Title III of the ADA. As such, Plaintiffs can only establish a violation of the Unruh Act by proving intentional discrimination. To make a prima facie case of intentional discrimination under the Unruh Act, Plaintiffs must allege "willful, affirmative misconduct with the

specific intent to accomplish discrimination on the basis of [a protected trait]." *Munoz,* 2024 U.S. Dist. LEXIS 201361 at *16 (citing *Martinez,* 81 Cal. App. 5th at 1036). Plaintiffs have not adequately alleged that Defendant has singled out those with lactose intolerance or milk allergies for its non-dairy alternative milk pricing.[3] As such, any claim under the Unruh Act fails.

Plaintiffs' Unruh Act claim also fails as a matter of law because all customers ordering a Non-Dairy Alternative in their coffee incur an upcharge, not only persons with lactose intolerance. Am. Compl. ¶ 85. The Unruh Act "does not extend to practices and policies that apply equally to all persons." *Turner v. Ass'n of Am. Med. Coll.*, 85 Cal. Rptr. 3d 94, 100 (Cal. Ct. App. 2008) (citing Cal. Civ. Code § 51(c)). For this reason alone, Plaintiffs' Unruh Act claim fails.

Plaintiffs' claim of alleged intentional discrimination under the Unruh Act also fails as it is based upon Plaintiffs misstatement that "Defendant is making a choice to impose the Surcharge for necessary beverage modifications for one class of persons with a specific disability, lactose intolerance, while at the same time not imposing any extra charge for those persons with another medical condition." Am. Compl. ¶ 136. Nothing in the Unruh Act or the ADA provides that a failure to accommodate different disabilities in the same manner, and for the same price, states a claim of intentional discrimination. Moreover, as Plaintiffs have already admitted, individuals with any medical condition or none at all are all required to pay more for Non-Dairy Alternatives. There is simply no valid allegation that Defendant's pricing of Non-Dairy Alternatives is designed to discriminate against individuals who cannot

---

[3] Plaintiffs' misstatement that "Defendants are making a choice to impose the Surcharge for necessary beverage modifications for one class of persons with a specific disability, lactose intolerance, while at the same time not imposing any extra charge for those persons with another medical condition." Second Am. Compl. ¶ 178. Nothing in the Unruh Act or the ADA provides that a failure to accommodate different disabilities in the same manner, and for the same price, states a claim of intentional discrimination. Moreover, as Plaintiffs admit, individuals with any medical condition or none at all are all required to pay more for Non-Dairy Alternatives. There is simply no valid allegation that Defendant's pricing of Non-Dairy Alternatives is designed or intended to discriminate against individuals who cannot tolerate lactose.

tolerate lactose.  As such, this claim fails.

### F.  **Plaintiffs Fail To State A Claim Of Unjust Enrichment Or Restitution**

This Court has already dismissed this claim with prejudice.  Tentative Ruling, Docket No. 29, p. 14.  As such, this claim is barred by the doctrine of res judicata.

## IV.    **CONCLUSION**

For the reasons set forth herein, Defendant asserts that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted and respectfully requests the Court grant its motion and dismiss Plaintiffs' Second Amended Complaint in its entirety.


Dated:  March 28, 2025                   JACKSON LEWIS P.C.


                                  By: */s/ Karen Luh*____
                                  Karen Luh
                                  Attorneys for Defendants
                                  INTERNATIONAL COFFEE & TEA,
                                  LLC, DBA THE COFFEE BEAN & TEA
                                  LEAF

4899-1746-5135, v. 1